[No. C063271. Third Dist. Nov. 30, 2010.]

JOHN DOE, a Minor, etc., et al., Plaintiffs and Appellants, v. ALBANY UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents.

COUNSEL

Law Offices of Donald P. Driscoll, Donald P. Driscoll and Adryane R. Omens for Plaintiffs and Appellants.

Marsha A. Bedwell, Amy Bisson Holloway and Jeanine K. Clasen for Defendant and Respondent California Department of Education.

Porter Scott, Michael W. Pott and Sophia S. Kwan for Defendants and Respondents Albany Unified School District and Board of the Albany Unified School District.

OPINION

**HULL, Acting P. J.**—Education Code section 51210 states: "The adopted course of study for grades 1 to 6, inclusive, *shall* include instruction . . . in the following areas of study: [¶] . . . [¶] (g) Physical education, with emphasis upon the physical activities for the pupils that may be conducive to health and vigor of body and mind, for a total period of time of *not less than* 200 minutes each 10 schooldays, exclusive of recesses and the lunch period." (Italics added; further undesignated section references are to the Education Code.) Plaintiffs, a third grade student in the Albany Unified School District (the District) and his father, brought this action against the District, the District's board of education (Board), and the State Department of Education (CDE) claiming the District and the Board (hereafter collectively AUSD) are not complying with the 200-minute requirement of section 51210, subdivision (g), and CDE is facilitating this noncompliance. Defendants demurred, arguing section 51210 does not establish mandatory duties, but goals and guidelines that are not enforceable by private parties. The trial court agreed and sustained the demurrers without leave to amend.

■ We conclude section 51210, subdivision (g), means what it says and that, while individual school districts may have discretion as to how to administer their physical education programs, those programs must satisfy the 200-minute per 10-schoolday minimum. We further conclude the trial court abused its discretion in refusing to grant plaintiffs leave to amend their complaint to state a claim for a writ of mandate to compel compliance with section 51210, subdivision (g). We therefore reverse the judgment.

FACTS AND PROCEEDINGS

The complaint was filed on February 3, 2009. At the time, fictitiously named plaintiff John Doe was a third grade student at Cornell Elementary School (Cornell), one of three elementary schools within the District. Doe and his father, Donald D., filed the action against defendants alleging four causes of action. However, plaintiffs later dismissed all but the first cause of action. The first cause of action alleges a violation of section 51210, subdivision (g), in that the District schedules no more than 120 minutes of physical education every 10 schooldays at Cornell, rather than the required 200 minutes, and CDE aids and abets the District's actions.

Plaintiffs filed a motion for preliminary injunction seeking to prohibit the District from violating section 51210, subdivision (g), during the pendency of this action. AUSD opposed the motion.

Defendants demurred to the complaint, asserting plaintiffs lack standing to pursue a claim under section 51210, because that section does not provide a private right of enforcement.

The trial court issued a tentative ruling sustaining the demurrers to the first cause of action without leave to amend. The court also issued a tentative ruling denying plaintiffs' request for a preliminary injunction.

At the hearing on defendants' demurrers, plaintiffs asserted they could state a claim for a writ of mandate to compel compliance with section 51210, subdivision (g). The trial court gave the parties leave to file supplemental briefs on the issue.

Following further briefing, the trial court affirmed its tentative rulings. The court concluded a writ of mandate is not available because section 51210, subdivision (g), does not impose any mandatory duty on defendants. The court thereafter issued orders sustaining defendants' demurrers without leave to amend and entered judgment for defendants.

DISCUSSION

I

*Mandatory or Discretionary*

Plaintiffs challenge both the order sustaining demurrers and the order denying their motion for preliminary injunction. They contend section 51210, subdivision (g), imposes a mandatory duty that may be enforced by private parties. They argue the complaint adequately states a claim for a violation of that provision and, if not, they should have been granted leave to amend to state a claim for a writ of mandate. Finally, plaintiffs argue they are entitled to a preliminary injunction requiring defendants to comply with section 51210, subdivision (g), until this matter can be resolved.

"On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

The complaint alleges section 51210, subdivision (g), mandates that students in grades one through six receive 200 minutes of physical education every 10 schooldays, but AUSD "schedules at most 120 minutes of physical education every 10 school days" at Cornell. It further alleges Doe receives at most 120 minutes of physical education every 10 schooldays, and CDE aids and abets this violation of section 51210, subdivision (g), "and communicates to AUSD that it will do nothing if AUSD violates the law." Finally, the complaint alleges plaintiffs have "repeatedly" asked AUSD to provide the required physical education, but they "continue to violate and refuse to comply with" section 51210, subdivision (g). Plaintiffs seek injunctive and declaratory relief.

Plaintiffs contend the foregoing adequately states a claim against both AUSD and CDE. They argue section 51210, subdivision (g), creates a mandatory duty on schools to provide a minimum of 200 minutes of physical education every 10 schooldays. By implication, they further argue CDE has a mandatory duty to enforce this 200-minute requirement.

The trial court concluded section 51210, subdivision (g), does not impose a mandatory duty. The court explained: "The Legislature's recognition of the need for a common state curriculum for the public schools was tempered by its concurrent recognition that, because of 'economic, geographic, physical, political and social diversity,' there is also a need to develop programs at the local level 'that will best fit the needs and interests of the pupils.' The Court concludes this language indicates the Legislature intended to set goals for local school districts to follow in creating their own programs, not to create requirements that are enforceable through private right of action."

The trial court relied in part on the general statement of legislative intent contained in section 51002. That section reads: "The Legislature hereby recognizes that, because of the common needs and interests of the citizens of this state and the nation, there is a need to establish a common state curriculum for the public schools, but that, because of economic, geographic, physical, political and social diversity, there is a need for the development of educational programs at the local level, with the guidance of competent and experienced educators and citizens. Therefore, it is the intent of the Legislature to set broad minimum standards and guidelines for educational programs, and to encourage local districts to develop programs that will best fit the needs and interests of the pupils, pursuant to stated philosophy, goals, and objectives." (*Ibid.*)

AUSD contends the trial court got it right, and section 51002 is the clearest statement of legislative intent with respect to section 51210, subdivision (g). AUSD argues the Legislature enacted section 51210, subdivision (g), as a "guideline to assist school districts" while encouraging them to develop programs that recognize the differences in philosophy, goals and objectives of each school district. According to AUSD, finding a mandatory duty in section 51210, subdivision (g), "would result in a contradictory legislative intent since it would mean the Legislature intended to impose a blanket mandatory duty despite recognizing there to be economic, geographic, and social diversity among the public schools which would result in variations in programs based on the needs and interests of the students."

■ We are presented here with a question of statutory construction. "The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. (*People v. Trevino* (2001) 26 Cal.4th 237, 240 [109 Cal.Rptr.2d 567, 27 P.3d 283]; *People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. (*Trevino*, at p. 241; *Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].) When the language of a statute

is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970]; *People v. Woodhead* (1987) 43 Cal.3d 1002, 1007–1008 [239 Cal.Rptr. 656, 741 P.2d 154].)" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].) In addition, "every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. [Citation.] Legislative intent will be determined so far as possible from the language of the statutes, read as a whole." (*County of Fresno v. Clovis Unified School Dist.* (1988) 204 Cal.App.3d 417, 426 [251 Cal.Rptr. 170].)

■  Section 51210 appears clear on its face. It reads: "The adopted course of study for grades 1 to 6, inclusive, *shall* include instruction . . . in the following areas of study: [¶] . . . [¶] (g) Physical education . . . for a total period of time of *not less than* 200 minutes each 10 schooldays . . . ." (Italics added.) In addition to the plain language of the foregoing provision, section 51210.1, subdivision (a)(1)(A), states: "The Education Code currently *mandates* 200 minutes of physical education every 10 schooldays for pupils in elementary school . . . ." (Italics added.) And while section 51002 calls for discretion due to "economic, geographic, physical, political and social diversity," such discretion is not precluded by section 51210, subdivision (g). The latter provision sets minimum requirements only. It does not prohibit a greater allocation of time to physical education or mandate how the minimum 200 minutes must be utilized, except insofar as there shall be an "emphasis upon the physical activities for the pupils that may be conducive to health and vigor of body and mind . . . ." (§ 51210, subd. (g).)

Finally, we note also that section 51002, on which the trial court relied says, in part: "[I]t is the intent of the Legislature to set broad *minimum* standards and guidelines for educational programs . . . ." (§ 51002, italics added.)

■  In construing a statute, we give words their usual and ordinary meaning. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) "It is a well-settled principle of statutory construction that the word 'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as mandatory, particularly when both terms are used in the same statute." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610].) Here, the word "shall" is used repeatedly in section 51210 with respect to

particular elements of an adopted course of study. However, the section also provides that the adopted course of study shall include "[o]ther studies that *may* be prescribed by the governing board." (§ 51210, subd. (h), italics added.)

Defendants argue the word "shall" in section 51210 does not necessarily denote a mandatory duty. In *Morris v. County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606], the California Supreme Court found Labor Code section 3800, which provided that counties requiring a building permit for a project " 'shall require that each applicant for such permit have on file or file . . . [a] certificate of insurance . . . ,' " imposed a mandatory duty. (*Morris*, at p. 906.) However, in a footnote, the court cautioned: "[W]e do not hold that every statute which uses the word 'shall' is obligatory rather than permissive. Although statutory language is, of course, a most important guide in determining legislative intent, there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion." (*Id.* at pp. 910–911, fn. 6.) The court cited as an example Government Code section 26501, which provides that a district attorney "shall institute" criminal proceedings when he has information that a public offense has been committed. In *Taliaferro v. Locke* (1960) 182 Cal.App.2d 752, 757 [6 Cal.Rptr. 813] (*Taliaferro*), the Court of Appeal construed this provision as conferring a discretionary power.

In *Taliaferro*, the court noted that while the statute uses the word "shall," this is qualified by ensuing clauses implying the district attorney must first reasonably suspect the person to be charged and have information causing him or her to believe an offense has been committed. In view of these clauses, the court concluded "the matters of investigation and prosecution [are] matters in which the district attorney is vested with discretionary power . . . ." (*Taliaferro, supra,* 182 Cal.App.2d at p. 757.)

In the present matter, neither AUSD nor CDE suggests any reason why the word "shall" as used in section 51210 should not be given its usual and ordinary meaning. Although they cite numerous cases where the courts have refused to impose a mandatory duty despite statutory language providing that certain actions "shall" be taken by a governmental entity, those cases must be viewed in context. As discussed in the next part, those cases did not concern the existence of a mandatory duty in the abstract. They involved a government tort claim, where the question was whether the statute in question created a mandatory duty that can be enforced in a civil action for damages. As we shall explain, this is very different from whether the statute in question can be enforced by an action in equity or a writ proceeding.

■ We conclude section 51210, subdivision (g), imposes a mandatory duty on school districts to include in an adopted course of study for grades one to six physical education for a total period of not less than 200 minutes each 10 schooldays. Although one might reasonably question the wisdom of the Legislature micromanaging the state's education system by mandating that schools throughout the state, regardless of circumstances, provide a minimum physical education requirement, that is nevertheless precisely what the Legislature has done. It is not for this court to second-guess the Legislature in this regard.

Plaintiffs have requested that we take judicial notice of three documents: (1) a May 11, 2009, letter from the State Superintendent of Public Instruction to school administrators expressing the view, among others, that the 200-minute provision of section 51210 is a requirement; (2) a faxed letter from CDE to plaintiff Donald D. regarding a government records request submitted by Donald D.; and (3) a copy of a page from CDE's Web site regarding physical education testing. Plaintiffs contend the first document is relevant to the question whether section 51210, subdivision (g), imposes a mandatory duty, and the other documents are relevant to whether plaintiffs can state a claim if given leave to amend. CDE opposes the request.

We have already concluded section 51210, subdivision (g), imposes a mandatory duty and, therefore, need not consider the first document. As for the other two, we conclude in the third part below that plaintiffs should have been granted leave to amend. Consequently, we need not consider the other documents either. Therefore, we deny plaintiffs' request for judicial notice.

We now turn to the question whether plaintiffs may enforce section 51210, subdivision (g), in a private civil action.

II

*Private Right of Action*

■ The question whether a given legislative enactment creates a mandatory duty is only half the equation. It must still be determined whether that duty may be enforced in a private action. As our Supreme Court has explained: "A violation of a state statute does not necessarily give rise to a private cause of action. (*Vikco Ins. Services, Inc. v. Ohio Indemnity Co.* (1999) 70 Cal.App.4th 55, 62 [82 Cal.Rptr.2d 442] (*Vikco*).) Instead, whether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute. (*Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58] (*Moradi-Shalal*) [no legislative intent that

Ins. Code, §§ 790.03 and 790.09 create private cause of action against insurer for bad faith refusal to settle claim]; *Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54 Cal.App.4th 121, 131, 135 [62 Cal.Rptr.2d 620] (*Crusader*) [no legislative intent that Ins. Code, § 1763 gave admitted insurers private right to sue surplus line brokers].) Such legislative intent, if any, is revealed through the language of the statute and its legislative history. (See *Moradi-Shalal, supra*, 46 Cal.3d at pp. 294–295.)

■ "A statute may contain ' "clear, understandable, unmistakable terms," ' which strongly and directly indicate that the Legislature intended to create a private cause of action. (*Moradi-Shalal, supra*, 46 Cal.3d at p. 295.) For instance, the statute may expressly state that a person has or is liable for a cause of action for a particular violation. (See, e.g., Civ. Code, § 51.9 ['A person is liable in a cause of action for sexual harassment' when a plaintiff proves certain elements]; Health & Saf. Code, § 1285, subd. (c) ['Any person who is detained in a health facility solely for the nonpayment of a bill has a cause of action against the health facility for the detention . . . .'].) Or, more commonly, a statute may refer to a remedy or means of enforcing its substantive provisions, i.e., by way of an action. (See, e.g., [Lab. Code,] § 218 ['Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article.']; Bus. & Prof. Code, § 17070 ['Any person . . . may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages.']; *id.*, § 6175.4, subd. (a) ['A client who suffers any damage as the result of a violation of this article by any lawyer may bring an action against that person to recover or obtain one or more of the following remedies.']; Civ. Code, § 1748.7, subd. (d) ['Any person injured by a violation of this section may bring an action for the recovery of damages, equitable relief, and reasonable attorney's fees and costs.']; see *Crusader, supra*, 54 Cal.App.4th at p. 136 [listing other statutes expressly creating cause of action].) If, however, a statute does not contain such obvious language, resort to its legislative history is next in order. (*Moradi-Shalal, supra*, 46 Cal.3d at pp. 300–301; see *Crusader, supra*, 54 Cal.App.4th at pp. 133–134, 136 [relying on principles of general statutory interpretation].)" (*Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596–597 [113 Cal.Rptr.3d 498, 236 P.3d 346], fn. omitted.)

Defendants cite numerous cases in support of their argument that section 51210 does not provide for enforcement by a private right of action. However, those cases all involved claims for damages under the Government Claims Act (Gov. Code, § 810 et seq.). That act generally provides immunity to governmental agencies for injuries caused by their acts or omissions. (Gov. Code, § 815.) However, Government Code section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public

entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

For example, in *Keech v. Berkeley Unified School Dist.* (1984) 162 Cal.App.3d 464 [210 Cal.Rptr. 7] (*Keech*), a 16-year-old student and his mother sued the school district for failure to follow various statutory requirements regarding applications for special education services. The plaintiffs alleged, among other things, the district acted negligently in failing to comply with former section 56321, subdivision (a), which, at the time, provided: "Whenever an assessment for the development or revision of the individualized education program is to be conducted, the parent of the pupil *shall* be given, in writing, a proposed assessment plan within 15 days of the referral for assessment. . . ." (Stats. 1982, ch. 1201, § 16, p. 4354, italics added.) The plaintiffs sought an award of damages for negligence, negligent infliction of emotional distress, and tortious failure to discharge mandatory duties. (*Keech, supra*, 162 Cal.App.3d at p. 467.)

The trial court dismissed the complaint after it sustained the defendants' demurrers with leave to amend and the plaintiffs failed to amend. (*Keech, supra*, 162 Cal.App.3d at pp. 466–467.) The Court of Appeal affirmed. The appellate court first rejected the plaintiffs' attempt to use the statutes as a basis for establishing a duty of care for purposes of their negligence claim. (*Id.* at p. 469.) It then rejected the plaintiffs' alternate theory that the statutory provisions imposed a mandatory duty and that failure to comply constituted an actionable tort under Government Code section 815.6. The court explained "Government Code section 815.6 'imposes liability for failure to discharge only such "mandatory duty" as is "imposed by an enactment that is *designed to protect against the risk of a particular kind of injury.*" ' " (*Keech, supra*, 162 Cal.App.3d at p. 470.) The court indicated use of the word "shall" in the statute is not conclusive. Rather, "[t]he controlling question is whether the enactment at issue was intended to impose an obligatory duty to take specified official action to prevent particular foreseeable injuries, thereby providing an appropriate basis for civil liability. [Citation.] If injury of the kind sustained by appellants was not one of the consequences which the Legislature sought to prevent through imposition of the alleged mandatory duty, liability does not obtain under Government Code section 815.6." (*Ibid.*) The court went on to conclude the statutes "cannot reasonably be construed as designed to 'protect' the parents of handicapped children from the 'injury' of having to pay the costs of hospitalizing a disturbed child pending assessment of the appropriate form of special education to be afforded . . . ." (*Id.* at p. 471.)

In *Tirpak v. Los Angeles Unified School Dist.* (1986) 187 Cal.App.3d 639 [232 Cal.Rptr. 61] (*Tirpak*), a nine-year-old student was suspended from

school for five days, after which he was prevented from returning to school because of psychiatric problems. The student was placed in a county hospital until removed by his mother due to reports of abuse. Attempts to have the student readmitted to school for the remainder of the school year failed. The student and his mother thereafter sued the school district for violation of various provisions of the Education Code regarding access to education and suspension procedures. They sought monetary damages. The trial court dismissed the complaint after sustaining the defendants' demurrers without leave to amend. (*Id.* at pp. 641–643.)

The Court of Appeal affirmed. The statutes in question, sections 48900, 48911 and 48918, prohibit suspension absent a prior determination that the student has committed one or more of a series of acts, and set up compulsory hearing and expulsion procedures. The plaintiffs argued liability existed under Government Code section 815.6. The defendants countered that the Education Code sections are directed at attaining education goals, not safeguarding against injury. The appellate court agreed with the defendants. (*Tirpak, supra,* 187 Cal.App.3d at p. 643.) The court explained: "[S]ections 48900, 48911 and 48918 can only be read as part of a comprehensive legislative scheme designed to ensure procedural fairness in suspension and expulsion proceedings. Although, these sections are broader than those litigated in *Keech* because they apply to all children, they clearly retain their administrative character. They do not expressly set forth a private cause of action for damages for breach of their provisions. And we otherwise do not discern a mandatory duty of care owed to plaintiffs with respect to economic damages arising from educational injury. The appropriate remedy for a breach of these statutory provisions is to proceed by way of administrative mandamus or injunction to enforce the procedures contained therein." (*Id.* at p. 645.)

The present matter is not based on any injury to plaintiffs caused by defendants' failure to comply with section 51210, subdivision (g), and plaintiffs are not seeking damages. They are instead seeking to force defendants to comply with the law by way of injunctive or declaratory relief. Nevertheless, the question remains whether plaintiffs have a right to do so through a civil action seeking equitable relief.

We need not decide that issue here. Even a party who is not authorized to pursue a civil action to force compliance with a particular legislative requirement may nevertheless be able to do so through a writ of mandate. As we explain in the next part, plaintiffs have a right to seek enforcement of section 51210, subdivision (g), by way of a writ of mandate.

III

*Writ of Mandate*

■ The fact that a particular statute may not create an explicit private right of action does not mean it cannot be the basis of a petition for writ of mandate to compel compliance. (*California Assn. for Health Services at Home v. State Dept. of Health Services* (2007) 148 Cal.App.4th 696, 705 [56 Cal.Rptr.3d 102].) "In California, a party who may not have standing to enforce [particular legislation] may still be entitled to enforce [it] by means of a writ of mandate under Code of Civil Procedure section 1085 if he is a beneficially interested party under Code of Civil Procedure section 1086." (*Mission Hospital Regional Medical Center v. Shewry* (2008) 168 Cal.App.4th 460, 479 [85 Cal.Rptr.3d 639].)

■ "A party may seek a writ of mandate 'to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . .' (Code Civ. Proc., § 1085, subd. (a).) In order to obtain writ relief, a party must establish ' "(1) A clear, present and usually ministerial duty on the part of the respondent . . . ; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty . . . ." ' [Citation.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 868 [62 Cal.Rptr.3d 614, 161 P.3d 1168].) "A ministerial act is one that a public functionary ' " 'is required to perform in a prescribed manner in obedience to the mandate of legal authority,' " ' without regard to his or her own judgment or opinion concerning the propriety of such act." (*Coachella Valley Unified School Dist. v. State of California* (2009) 176 Cal.App.4th 93, 113 [98 Cal.Rptr.3d 9].)

At the hearing below, plaintiffs for the first time asserted a right to seek relief by way of a traditional writ of mandate. The trial court gave the parties leave to file supplemental briefs on the issue, which they did. The court thereafter ruled that mandamus relief is unavailable because section 51210, subdivision (g), does not create a mandatory duty.

AUSD contends the question whether mandamus relief is appropriate here is irrelevant, because plaintiffs did not petition for a writ of mandate, the trial court did not treat the complaint as a petition for writ of mandate, and the court did not consider whether plaintiffs may petition for a writ of mandate. CDE likewise argues plaintiffs did not assert a writ of mandate claim, did not raise the issue until the hearing below, and therefore may not pursue such a claim here.

■ However, it does not really matter if plaintiffs expressly sought a writ of mandate below. "[W]e are not limited to plaintiffs' theory of recovery

in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory. The courts of this state have . . . long since departed from holding a plaintiff strictly to the 'form of action' he has pleaded and instead have adopted the more flexible approach of examining the facts alleged to determine if a demurrer should be sustained." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817].) "As against a general demurrer, . . . it is unimportant that plaintiff's pleading was not in form a petition for mandamus . . . . All that is required is that plaintiff state facts entitling him to some type of relief, and if a cause of action for mandamus . . . has been stated, the general demurrer should have been overruled." (*Boren v. State Personnel Board* (1951) 37 Cal.2d 634, 638 [234 P.2d 981].)

Furthermore, contrary to AUSD's representation, the trial court did consider whether plaintiffs may petition for a writ of mandate. After permitting supplemental briefing on the issue, the court considered and rejected such a claim, concluding mandamus is unavailable because section 51210, subdivision (g), does not impose a mandatory duty. Thus the question whether the complaint states a claim for traditional mandamus is properly before us.

CDE contends the allegations of the complaint do not satisfy the requirements for a mandate claim in that they fail to allege plaintiffs have a legally protected beneficial interest in defendants' compliance with section 51210, subdivision (g), greater than that of the general public. AUSD in turn argues the complaint does not adequately allege plaintiffs have a beneficial interest in issuance of a writ of mandate inasmuch as there is no claim that plaintiffs "have suffered an injury that is concrete and particularized, and actual or imminent."

 We are not persuaded. "A beneficially interested party is one who has 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. [Citations.] . . . "One who is in fact adversely affected by governmental action should have standing to challenge that action if it is judicially reviewable." [Citation.]' [Citation.]" (*Mission Hospital Regional Medical Center v. Shewry, supra,* 168 Cal.App.4th at p. 479.) "To establish a beneficial interest, the petitioner must show he or she has some special interest to be served or some particular right to be preserved or protected through issuance of the writ. (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276].) Stated differently, the writ must be denied if the petitioner will gain no direct benefit from its issuance and suffer no direct detriment if it is denied." (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1232 [94 Cal.Rptr.2d 740].)

In this instance, we fail to see how defendants can seriously argue plaintiff Doe does not have a beneficial interest in the District's compliance with section 51210, subdivision (g). The complaint alleges Doe is a student at Cornell, one of the District's three elementary schools, and that Cornell is providing only 120 minutes of physical education each 10 schooldays rather than the required 200 minutes. Thus, according to the complaint, Doe is being deprived of 80 minutes of physical education each 10 schooldays.

AUSD argues the intent underlying section 51210 was not to protect the health and welfare of elementary school students but to "establish a common curriculum and to encourage local school districts to develop programs that would incorporate the education guidelines and standards it establishes." However, this argument is belied by section 51210.1, which is a statement of legislative findings regarding physical education in schools. It reads:

"(a)(1) The Legislature finds and declares all of the following:

"(A) The Education Code currently mandates 200 minutes of physical education every 10 schooldays for pupils in elementary school. Recent studies have shown that the vast majority of children and youth are not physically fit.

"(B) According to a March 1997 report by the Centers for Disease Control, the percentage of children and adolescents who are overweight has more than doubled in the last 30 years. Most of this increase occurred within the last 10 years.

"(C) Nearly 40 percent of children of ages five to eight years have health conditions that significantly increase their risk of early heart disease.

"(D) Some 70 percent of girls, and 40 percent of boys, who are from 6 to 12 years of age do not have enough muscle strength to do more than one pullup.

"(E) Most children lead inactive lives. On the average, first through fourth graders spend two hours watching television on schooldays and spend close to three and one-half hours watching television on weekend days.

"(2) It is, therefore, the intent of the Legislature that all children shall have access to a high-quality, comprehensive, and developmentally appropriate physical education program on a regular basis."

While the Legislature may have been interested in encouraging local schools to adopt uniform curricula that meet various legislative guidelines,

the ultimate goal was obviously to improve the health and well-being of elementary school students through a minimum level of physical education. Hence, plaintiff Doe has a sufficient beneficial interest to pursue a claim seeking a writ of mandate.

As for plaintiff Donald D., if his interest as the parent of plaintiff Doe in the latter's education is not a sufficient beneficial interest in itself (see *In re Samuel G.* (2009) 174 Cal.App.4th 502, 509 [94 Cal.Rptr.3d 237] ["Among the constitutional privileges enjoyed by parents is the right to determine how their children should be educated."]), he certainly has an interest as a citizen in seeing that section 51210, subdivision (g), is properly enforced. "The beneficial interest standard is so broad, even citizen or taxpayer standing may be sufficient to obtain relief in mandamus. '[W]here a public right is involved, and the object of the writ of mandate is to procure enforcement of a public duty,' a citizen is beneficially interested within the meaning of Code of Civil Procedure section 1086 if 'he is interested in having the public duty enforced.' [Citation.]" (*Mission Hospital Regional Medical Center v. Shewry, supra,* 168 Cal.App.4th at p. 480.) This public interest exception " 'promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right.' " (*Driving Sch. Assn. of Cal. v. San Mateo Union High Sch. Dist.* (1992) 11 Cal.App.4th 1513, 1518 [14 Cal.Rptr.2d 908].)

CDE contends the complaint nevertheless fails to allege plaintiffs have no adequate remedy at law which, it asserts, is a prerequisite to seeking a writ of mandate. Code of Civil Procedure section 1086 states a writ of mandate must be issued "in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. . . ." This provision imposes a requirement that a beneficially interested party must first exhaust administrative remedies before seeking a writ of mandate to compel agency action. (*Amador Valley Secondary Educators Assn. v. Newlin* (1979) 88 Cal.App.3d 254, 257 [151 Cal.Rptr. 724]; *Aebli v. Board of Education* (1944) 62 Cal.App.2d 706, 718 [145 P.2d 601].)

"It is well settled as a general proposition that a litigant will not be afforded relief in the courts unless and until he has exhausted available administrative remedies." (*In re Strick* (1983) 148 Cal.App.3d 906, 911 [196 Cal.Rptr. 293].) The doctrine of exhaustion is not a matter of judicial discretion but a fundamental rule of procedure. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 293 [109 P.2d 942].) A primary purpose of the doctrine is to lighten the load on the courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the

desired relief. (*Duffy v. State Bd. of Equalization* (1984) 152 Cal.App.3d 1156, 1164 [199 Cal.Rptr. 886]; *Morton v. Superior Court* (1970) 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533].)

An exception to the exhaustion requirement is recognized where pursuit of administrative remedies would be futile. (*In re Strick, supra*, 148 Cal.App.3d at p. 911.) Specifically, exhaustion is not required where the petitioner "can positively state that the [administrative agency] has declared what its ruling will be in the particular case." (*Gantner & Mattern Co. v. California E. Com.* (1941) 17 Cal.2d 314, 318 [109 P.2d 932]; see also *George Arakelian Farms, Inc. v. Agricultural Labor Relations Bd.* (1985) 40 Cal.3d 654, 662 [221 Cal.Rptr. 488, 710 P.2d 288]; *County of Contra Costa v. State of California* (1986) 177 Cal.App.3d 62, 77–78 [222 Cal.Rptr. 750].)

CDE asserts plaintiffs had an adequate administrative remedy available to them, to.wit, "they could have sought relief through a grievance or similar hearing proceeding before the AUSD Board." However, CDE provides no specifics as to this purported grievance procedure and no citation to the record or law supporting their bare assertion that such procedure exists and was available to plaintiffs. On the other hand, the burden would normally be on plaintiffs to allege either that there is no available administrative remedy, they pursued any available remedy to no avail, or resort to the administrative remedy would be futile under the circumstances.

Plaintiffs do not respond to this argument. However, we note the complaint currently alleges: "Plaintiffs have repeatedly asked defendants AUSD and the Board of Education to provide the physical education to which students are legally entitled, but AUSD and the Board of Education continue to violate and refuse to comply with Education Code Section 51210." This allegation is less than clear as to whether plaintiffs are asserting they pursued available administrative remedies, if any, or simply made informal requests for modification of the physical education program. Nevertheless, we believe it is sufficient to suggest plaintiffs may be able to provide a more specific allegation regarding the availability of administrative remedies.

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]" (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318.) In this instance, we conclude the trial court abused its discretion in refusing to grant plaintiffs leave to amend their complaint to state a more complete claim for mandamus.

## IV

### *Interim Relief*

Plaintiffs contend the trial court erred in denying their motion for a preliminary injunction to require defendants to comply with section 51210, subdivision (g), pending final resolution of this matter. They argue the declarations submitted by defendants in opposition to their motion do not provide legitimate examples of supplemental physical education provided by teachers at Cornell. They further argue the inherent harm in defendants' continued failure to comply with section 51210, subdivision (g), is "a continued increase in childhood obesity and related health problems."

Because the complaint in its present form does not state a claim against defendants, there was no basis for the trial court to provide interim relief. Plaintiffs will have an opportunity to seek such relief upon remand.

### Disposition

The judgment of dismissal is reversed and the matter remanded to the trial court with directions to vacate its order sustaining defendants' demurrers without leave to amend and to enter a new order sustaining the demurrers *with* leave to amend to state a claim for traditional mandamus. Plaintiffs are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Robie, J., and Butz, J., concurred.

A petition for a rehearing was denied December 22, 2010, and respondents' petition for review by the Supreme Court was denied March 16, 2011, S189670.