Filed 10/26/20  USCivicLeague.org v. Superior Court CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| USCIVICLEAGUE.ORG,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>        Defendant and Respondent;<br><br>TONY THURMOND, as State Superintendent of Public Instruction, etc., et al.,<br><br>        Real Parties in Interest and Respondents. | A156698<br><br><br>(Alameda County Super. Ct. No. HG16832657) |

This is an appeal from final judgment after the trial court denied plaintiff USCivicLeague.org's second amended petition for writ of mandate pursuant to Code of Civil Procedure section 1085.[1]  Through this petition, USCivicLeague.org sought a writ of mandate and other declaratory and injunctive relief directing real parties in interest[2] to comply with their duty to

---

[1] Unless otherwise stated, all statutory citations are to the Code of Civil Procedure.

[2] Real parties originally included Tom Torlakson in the capacity of State Superintendent of Public Instruction (Superintendent); Board of Governors of the California Community Colleges; and Edmund G. Brown, Jr.,

provide " 'basically equal' " education to all students attending California public schools and community colleges, citing the equal protection clauses of the state and federal Constitutions and *Butt v. State of California* (1992) 4 Cal.4th 668 (*Butt*).

In *Butt*, the California Supreme Court held: "California['s] Constitution makes public education uniquely a fundamental concern of the State and prohibits maintenance and operation of the common public school system in a way which denies basic educational equality to the students of particular districts. The State itself bears the ultimate authority and responsibility to ensure that its district-based system of common schools provides basic equality of educational opportunity." (*Butt*, *supra*, 4 Cal.4th at p. 685.) According to USCivicLeague.org, real parties improperly relegate their duty to manage public schools so as to ensure basic equality of education to local school boards and other local entities. Accordingly, the organization sought a writ of mandate, declaratory relief, and injunctive relief.

The trial court denied USCivicLeague.org's petition on the grounds that it lacked standing. Alternatively, the trial court found that USCivicLeague.org failed to prove any violation of the equal protection clause, which was the premise of each of its causes of action. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

USCivicLeague.org is a registered California nonprofit corporation. On September 26, 2016, USCivicLeague.org filed a verified petition for writ of mandate and for injunctive relief pursuant to section 1085 (petition). In this

---

in the capacity of Governor of the State of California. Since the time this petition was filed, Tony Thurmond has replaced Torlakson as Superintendent and Gavin Newson has replaced Brown as Governor.

petition, USCivicLeague.org alleged real parties are not complying with their constitutional duty set forth in *Butt* to manage the statewide public school system so as to "assure basic public education equality irrespective of district residence." USCivicLeague.org thus sought a writ of mandate ordering real parties to comply with this duty, as well as a variety of related injunctive measures intended to ensure that real parties responsibly manage the public school and community college systems so as to provide equal education, without relegating its duty to local entities.

On May 26, 2017, the Superintendent demurred to the petition for lack of standing and uncertainty. The trial court sustained the demurrer with leave to amend on the sole ground of uncertainty. Thus, on August 29, 2017, USCivicLeague.org filed a first amended verified petition for writ of mandate and for declaratory and injunctive relief (first amended petition). Real parties again demurred on uncertainty grounds, but the court overruled it on November 21, 2017.

On January 11, 2018, pursuant to a stipulated order,[3] USCivicLeague.org filed the operative petition, to wit, the second amended verified petition for writ of mandate and for declaratory and injunctive relief (second amended petition), asserting three causes of action: (1) for a traditional writ of mandate under section 1085 compelling real parties to manage the public school system in a manner that ensures the provision of basically equal education to all as required by the Constitution and *Butt*; (2) for declaratory relief under section 1060 proclaiming that all constitutional, statutory and regulatory provisions permitting local

---

[3] USCivicLeague.org sought leave to amend the first amended petition to add references to specific provisions of the California Constitution that it claims are illegal and in conflict with *Butt*.

governments to manage public school education are unconstitutional under the equal protection clause and *Butt*; and (3) for injunctive relief under section 526a barring real parties, for the pendency of this lawsuit, from allowing new local taxes and debt for public education based on local boundaries or using public school lands for purposes other than hosting public school facilities.

On January 30, 2018, the Superintendent answered the second amended petition.

On August 7, 2018, USCivicLeague.org filed a motion proposing the following writ of mandate to be directed toward real parties: "(1) assume direct management and administrative responsibility for K-12 and community college public education throughout the State; (2) ensure students have 'basically equal' education regardless of district residence; (3) bar local governments and entities from being involved in managing public school assets; (4) bar the sale of public school assets by local education agencies; bar the lease of public school assets; (5) bar construction on public school grounds that are led by local governments and/or local entities; (6) declare any constitutional, statutory, or regulatory provisions that provide for local governance of public schools null, void, and in violation of Constitutional provisions as interpreted by . . . *Butt*; and (7) render constitutional, statutory, and regulatory provisions providing for public education taxes based on local boundaries null and void."

On January 9, 2019, following a contested hearing, the trial court denied USCivicLeague.org's second amended petition and related motion on two distinct grounds: (1) lack of standing; and (2) even assuming standing were to exist, USCivicLeague.org failed to meet its burden of proof with respect to any of its three causes of action, each of which is premised on a

4

violation of equal protection.  Accordingly, judgment against
USCivicLeague.org and in favor of real parties was entered on February 25,
2019.

On March 6, 2019, USCivicLeague.org filed a timely notice of appeal of
the judgment.

## DISCUSSION

This appeal presents the following issues:

(1) Does USCivicLeague.org have standing to bring this lawsuit?

(2) If so, is USCivicLeague.org entitled to a writ of mandate compelling
real parties to meet their constitutional duty to manage the public school
system in a manner that ensures "basically equal" education regardless of
local boundaries?

(3) Is USCivicLeague.org entitled to declaratory and injunctive relief
aimed at ensuring real parties meet their aforementioned duty to provide
basically equal public education?

We address each issue below to the extent appropriate.

## I.    Standing.

"As a general rule, a party must be 'beneficially interested' to seek a
writ of mandate.  ( . . . , § 1086.)  'The requirement that a petitioner be
"beneficially interested" has been generally interpreted to mean that one may
obtain the writ only if the person has some special interest to be served or
some particular right to be preserved or protected over and above the interest
held in common with the public at large.  [Citations.]  As Professor Davis
states the rule:  "One who is in fact adversely affected by governmental action
should have standing to challenge that action if it is judicially reviewable."
(Davis, 3 Administrative Law Treatise (1958) p. 291.)'  [Citation.]  The
beneficial interest must be direct and substantial.  [Citations.]"  (*Save the*

*Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165.)
" 'Stated differently, the writ must be denied if the petitioner will gain no direct benefit from its issuance and suffer no direct detriment if it is denied.' [Citation.]" (*Doe v. Albany Unified School Dist.* (2010) 190 Cal.App.4th 668, 683.)

The trial court found USCivicLeague.org had no standing in this case as a real party in interest (§ 367), or as a "public interest" advocate, or as a taxpayer (§ 526a). The court reasoned that USCivicLeague.org had produced no evidence that it had standing to sue in a representative capacity to enforce a private interest, to procure enforcement of a public duty, or based on its payment of any state or local tax.

On appeal, USCivicLeague.org challenges only the court's finding under section 367 that it lacked standing as a real party in interest, thereby waiving any challenge to the court's alternative findings on public interest and taxpayer standing. In doing so, USCivicLeague.org points to a single allegation in its second amended petition that it is "a non-profit corporation and is 'beneficially interested in the performance of the duties stated' in its petition." We agree with the trial court that USCivicLeague.org's conclusory assertion of a beneficial interest is insufficient to establish standing to bring the second amended petition.

"There are two prongs to the test for the beneficial interest required to pursue an action in mandamus. The first . . . is whether the plaintiff will obtain some benefit from issuance of the writ or suffer some detriment from its denial. The plaintiff's interest must be direct [citations], and it must be substantial. [Citation.] Also, it generally must be special in the sense that it is over and above the interest held in common by the public at large. [Citation.] [¶] The second prong of the beneficial interest test is whether the

interest the plaintiff seeks to advance is within the zone of interests to be protected or regulated by the legal duty asserted." (*Waste Management of Alameda County, Inc. v. County of Alameda* (2000) 79 Cal.App.4th 1223, 1233–1234.)

USCivicLeague.org has not met this two-prong test. In particular, USCivicLeague.org has failed to identify, much less prove, that were the second amended petition granted, the organization would obtain a particular benefit that is both direct, substantial and within the zone of interest to be protected by the identified legal duties. Instead, USCivicLeague.org merely claims in broad terms, without evidentiary support, that it is beneficially interested in the performance of the duties set forth in this petition regarding proper management of the public school and community college systems. This assertion does not establish standing. (See *Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1041 ["a plaintiff must show he or she or those he or she properly represents have either suffered or are threatened with an injury of sufficient magnitude that it is reasonably assured the lawsuit will provide an adequate presentation of all relevant facts and issues"].)

Moreover, while USCivicLeague.org claims that its Web site, http://uscivicleague.org, "identifies its goal as 'promot[ing] and act[ing] on selected issues relating to equal opportunity in public education and protection of community welfare,' " this Web site and the material contained therein were not before the trial court and are not a part of our record on appeal. Accordingly, we decline to consider them. (See *Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102 ["Factual matters that are not part of the appellate record will not be considered on appeal and such matters should not be referred to in the briefs"]; Cal. Rules of Court, rule 8.204(a)(2)(C).)

7

Last, USCivicLeague.org points out that a different trial court judge, when overruling real parties' demurrer to the original petition, found that the organization had adequately pleaded beneficial interest or public interest standing. Specifically, the record reflects that when overruling real parties' demurrer to the original petition, the judge found that USCivicLeague.org's assertion that it is a nonprofit corporation with an interest in the litigation was a "sufficient allegation of a beneficial interest standing for purposes of the pleadings." In addition, the judge alternatively found, with no explanation, that USCivicLeague.org had "adequately alleged public interest standing." These findings do not help USCivicLeague.org here. The standard for ruling on a demurrer is not whether a particular fact has been established but, rather, whether, assuming the fact is true, the party opposing the demurrer can state a cause of action as a matter of law. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [" 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law' "].)

Here, we are concerned with the merits of a petition for writ of mandate, not a demurrer. To be entitled to such writ, the petitioning party must prove: (1) a " ' "clear, present and usually ministerial duty on the part of the respondent" ' "; and (2) a " ' "clear, present and beneficial right in the petitioner to the performance of that duty . . . ." ' " (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 868.) As we just explained, USCivicLeague.org has presented no evidence of a clear, present and beneficial right to the performance of any duty on the part of real parties. Further, USCivicLeague.org has directed us to no legal authority, and we know of none, precluding a trial court from denying a petition for writ of mandate for lack of standing on the basis of an earlier ruling by another

8

judge that found standing under a more lenient standard solely for purposes of overruling a demurrer.

Accordingly, for the reasons stated, we agree with the trial court that USCivicLeague.org lacks standing under section 367 to bring the second amended petition.

## II.     No Violation of Equal Protection.

Even assuming for the sake of argument that standing could be found on this record, we further agree with the trial court that each of USCivicLeague.org's three causes of action fails for lack of evidence or reasoned argument.

### A.     *First Cause of Action: Writ of Mandate.*

The first cause of action seeks a writ of mandate compelling real parties to comply with their legal duties under *Butt* to manage the public school and community college systems in a manner that ensures basic equality of education for students, and not to relegate these duties to local governments.

"[T]he California Constitution guarantees 'basic' equality in public education, regardless of district residence." (*Butt*, *supra*, 4 Cal.4th at p. 692.) "The Constitution of 1849 directed the Legislature to 'provide for a system of common schools, by which a school shall be kept up and supported in each district . . . .' (Cal. Const. of 1849, art. IX, § 3.)" (*Id.* at p. 680.) The California Constitution also authorizes the formation of local school districts and permits the Legislature to grant the local districts authority over their affairs to the extent it does not "conflict with the laws and purposes for which school districts are established." (Cal. Const., art. IX, §§ 6, 14.)

However, notwithstanding the grant of authority extended to local districts, the state bears "ultimate responsibility for equal operation of the

9

common school system." (*Butt, supra*, 4 Cal.4th at p. 692.) When discharging this responsibility, "the equal protection clause precludes the State from maintaining its common school system in a manner that denies the students of one district an education basically equivalent to that provided elsewhere throughout the State." (*Id*. at p. 685.)

Here, the trial court found that USCivicLeague.org failed its burden of proof in seeking a writ of mandate because there was no evidence that real parties were violating the equal protection clauses of the California and United States Constitutions[4] by failing to discharge their duty to provide substantially equal education to every student regardless of his or her local school district. USCivicLeague.org, in turn, contends the trial court erred by not considering its equal protection claims under the heightened "strict scrutiny" standard.

USCivicLeague.org correctly notes that courts apply different levels of scrutiny depending on the type of legal classification at issue. Where a law distinguishes between different classes of individuals based on race, national origin or another basis affecting fundamental rights, we apply strict scrutiny to determine whether a violation of equal protection occurred. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836–837.) However, where a classification is made on a basis that does not affect individual fundamental rights or

---

[4] The equal protection provisions of the California Constitution are " 'substantially the equivalent of' " the equal protection clause of the Fourteenth Amendment of the United States Constitution. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 571–572.)

involve  suspect classifications, we consider whether the law's disparate impact is " 'rationally related to a legitimate governmental purpose.' "[5]  (*Ibid*.)

We agree with USCivicLeague.org as a general matter that "[b]ecause education is a fundamental interest in California, denials of basic educational equality on the basis of district residence are subject to strict scrutiny." (*Butt*, *supra*, 4 Cal.4th at p. 692.)  However, we need not undertake the strict scrutiny inquiry for purposes of this appeal.  Because, as the trial court found, USCivicLeague.org failed to provide evidence of any disparate treatment on the basis of a person's residence in a particular local school district, the strict scrutiny standard is not implicated.  (See *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [" 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner' "]; *Vergara v. State of California* (2016) 246 Cal.App.4th 619, 646 [" 'In equal protection analysis, the threshold question is whether the legislation under attack somehow discriminates against an identifiable class of persons.  [Citation.]  Only then do the courts ask the further question of whether this identifiable group is a suspect class or is being denied some fundamental interest, thus requiring the discrimination to be subjected to close scrutiny' "].)

Turning to the disparate treatment issue, USCivicLeague.org's evidence consists of two emails from "Glen Wetzel [¶] Member of the Public" to the Superintendent and the Board of Governors of the California Community Colleges.  The first email contains a table comparing Palo Alto

---

[5] Courts also apply a level of intermediate scrutiny to discriminatory classifications based on sex or illegitimacy.  (*People v. Wilkinson*, *supra*, 33 Cal.4th at p. 836.)

Unified (PAU) and East Side Union High School Districts reflecting the following: (1) a 37.3-percent differential in PAU's favor for teachers per 1,000 students; (2) a 33.3-percent differential in PAU's favor for administrators per 1,000 students; and (3) a 59.5-percent differential in PAU's favor for "Classified Staff" per 1,000 students. The second email contains a table and other information comparing San Jose Evergreen Community College District (SJECCD) and Foothill De-Anza Community College District (FHDA). According to this email, FHDA, which served approximately 375,000 residents, held an advantage over SJECCD, which served approximately a million residents, as to the following factors: (1) number of degree programs (136 compared to 76); (2) number of sports teams (32 compared to 8); (3) swimming pools (two Olympic size pools to none); and (4) school land (237 acres to 182 acres).

Thus, USCivicLeague.org's evidence demonstrates differences between just two pairs of school districts, one pair involving high schools and the other involving community colleges. Yet, in California, there are over 10,000 public schools serving over 6 million students. Even putting aside the minuscule size of USCivicLeague.org's sample, this evidence does not prove, based on these differences, that real parties provided "severely unequal education for students." "A finding of constitutional disparity depends on the individual facts. Unless the actual quality of the district's program, viewed as a whole, falls fundamentally below prevailing statewide standards, no constitutional violation occurs." (*Butt, supra,* 4 Cal.4th at pp. 686–687.)

Here, the bare numbers relied upon by USCivicLeague.org offer no information whatsoever about the quality of education provided by a particular school or district, much less that it was severely unequal. Among other things, there is no information in this record comparing, as between the

12

two pairs of high school and community college districts, student performance, quality of teaching, quality of school facilities or other resources, or overall student satisfaction with their academic experience. Moreover, there is no expert declaration or report addressing the alleged disparate treatment of students based on local school district boundaries. (Cf. *Butt*, *supra*, 4 Cal.4th at p. 675 [noting that plaintiffs' evidentiary submission included declarations by teachers, education experts, and members of the board of education that "detailed the serious disruptive effect the proposed closure would have upon the educational process in the District and upon the quality of education afforded its students"].) Last, there is no evidence reflecting that any particular act or omission by real parties caused a particular class of students to receive an inferior education as compared to another class of students based on their residence.

On this record, USCivicLeague.org is not entitled to a writ of mandate. As *Butt* aptly explains, "the Constitution does not prohibit all disparities in educational quality or service. Despite extensive State regulation and standardization . . . , the experience offered by our vast and diverse public school system undoubtedly differs to a considerable degree among districts, schools, and individual students. These distinctions arise from inevitable variances in local programs, philosophies, and conditions. . . . *[P]rinciples of equal protection have never required the State to remedy all ills or eliminate all variances in service.*" (*Butt*, *supra*, 4 Cal.4th at p. 686, italics added.) While USCivicLeague.org has shown differences among certain schools, it has not shown the differences amount to a denial of equal protection to the students of any district. Its request for writ of mandate thus fails.

**B.** *Second Cause of Action: Declaratory Relief.*

In its second cause of action, USCivicLeague.org seeks declaratory relief based on equal protection with respect to all constitutional, statutory and regulatory provisions that reference local governments' managing public schools, including (but not limited to) California Constitution, article IX, sections 3, 3.1, 3.2, 3.3, 5, 6, 6.5, 7, 14 and 16, and Education Code sections 1 through 32500, 33000 through 64100, and 66000 through 101060. USCivicLeague.org further seeks declaratory relief, also based on equal protection, with respect to constitutional and statutory provisions referencing tax and debt for public education based on local boundaries, including (but not limited to) Education Code sections 14220 through 14401.1, 15100 through 15262 and 15300 through 15425.[6]

Despite identifying literally thousands of constitutional and statutory provisions in the second amended petition, in its appellate briefs USCivicLeague.org provides no legal analysis whatsoever with respect to any

---

[6] A voluminous number of statutes governs nearly all aspects of our public school system, including, but not limited to, "county and district organization, elections, and governance ([Ed. Code,] §§ 4000–5450, 35000–35780); educational programs, instructional materials, and proficiency testing ([*id*.,] §§ 51000–62008); sex discrimination and affirmative action ([*id*.,] §§ 40–41, 200–263, 44100–44105); admission standards ([*id*.,] §§ 48000–48053); compulsory attendance ([*id*.,] §§ 48200–48416); school facilities ([*id*.,] §§ 39000–40048); rights and responsibilities of students and parents ([*id*.,] §§ 48900–49079); holidays ([*id*.,] §§ 37220–37223); school health, safety, and nutrition ([*id*.,] §§ 32000–32254, 49300–49570); teacher credentialing and certification ([*id*.,] §§ 44200–44481); rights and duties of public school employees ([*id*.,] §§ 44000–44104, 44800–45460; see also Gov. Code §§ 3540–3549.3 [organizational and bargaining rights]); and the pension system for public school teachers ([Ed. Code,] §§ 22000–24924).  The statutory scheme has spawned further voluminous regulations administered by the State's Department of Education and the SPI.  (Cal. Code Regs., tit. 5, §§ 1–23005.)" (*Butt*, *supra*, 4 Cal.4th at p. 689.)

14

individual provision.  We wholeheartedly agree with real parties that they should not be required to defend statutes that were never even discussed by USCivicLeague.org.  Indeed, statutes are presumed constitutional in the absence of a clear and unmistakable showing to the contrary.  (See *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 10–11 [" 'The courts will presume a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity' "].)  Here, USCivicLeague.org made no attempt to meet this standard.  Accordingly, USCivicLeague.org has forfeited the right to challenge the trial court's order denying declaratory relief.

### C.    *Third Cause of Action: Injunctive Relief.*

In its third cause of action, USCivicLeague.org seeks an injunction, until this case is decided, prohibiting real parties from (1) imposing new local taxes and debt for public education and (2) using public school lands for purposes other than hosting public school facilities.  USCivicLeague.org reasons that imposing such new taxes and debt or using public school land for unauthorized purposes would contribute to differences in local schools and deny equal protection.

As discussed at length above, USCivicLeague.org failed to prove any violation of equal protection, which is the theory underlying both of its requests for injunctive relief, as well as each of its causes of action. Accordingly, the trial court's refusal to grant injunctive relief stands.

### DISPOSITION

The order denying the second amended verified petition for writ of mandate, declaratory relief and injunctive relief filed by USCivicLeague.org is affirmed.

15

_____
Jackson, J.

WE CONCUR:


_____
Siggins, P. J.


_____
Fujisaki, J.


A156698/*USCivicLeague.org v. Superior Court (Thurmond)*

16