[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 504 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 505 
OPINION
In this case, we hold the juvenile court properly ordered the San Diego County Health and Human Services Agency (Agency) to pay for the travel of a dependent child's educational representative to visit him at his out-of-county placement.
 FACTS
In September 2004, when Samuel G. was nine years old, he was separated from his mother, Catherine B., while in downtown Oceanside. Police picked up Samuel and took him to Polinsky Children's Center. Catherine, then living in a shelter, was contacted after she went to the police station to seek help in finding Samuel. Catherine said she was unable to care for Samuel, who had attention deficit hyperactivity disorder. Samuel's father was not interested in caring for him.
On October 12, 2004, the juvenile court sustained Agency's petition under Welfare and Institutions Code, [1] section 300, subdivision (b), declared Samuel a dependent child and placed him in out-of-home care.
In December, Samuel was detained at the New Alternatives No. 11 facility, where he remained for seven months awaiting a suitable placement. At New Alternatives, Samuel displayed impulsiveness, hyperactivity, poor social skills, oppositional behavior with staff, conflicts with his peers and insomnia.
In March 2005, Agency recommended the juvenile court limit Catherine's educational rights and request the local educational agency to appoint a surrogate parent under Government Code section 7579.5, subdivision (b). In April 2005, Samuel had an individualized education plan (IEP), which provided he qualified for special learning disability services because of visual and auditory memory deficits and attention deficits. In May, a psychological evaluation diagnosed Samuel as psychotic and suffering from neurological dysfunction and depression. In July, Samuel was placed in a licensed group home at the San Diego Center for Children.
On July 11, 2005, the court suspended Catherine's educational rights and requested the local education agency appoint a surrogate parent pursuant to Government Code section 7579.5, subdivision (b). The record on appeal does *Page 507 
not show whether the local educational agency received the court's request or took any action. On October 11, the juvenile court appointed Kate So as Samuel's court-appointed special advocate (CASA).[2] The court also appointed So as Samuel's educational "surrogate."[3] So began visiting Samuel on a weekly basis. She subsequently recommended complete "psycho-educational testing" for Samuel. So also attended all of Samuel's IEP meetings.
By spring 2006, Samuel was doing well at Whittier Elementary School. In April, Catherine moved to Kansas. On July 14, the court, using the Judicial Council's JV-535 form, appointed So as Samuel's educational representative under section 361, subdivision (a).[4] On July 18, the court terminated Catherine's reunification services and found a section 366.26 hearing was not appropriate because Samuel was not a proper subject for adoption and no one was willing to be his legal guardian. The court selected another planned permanent living arrangement as Samuel's permanent plan. The court also ordered So to continue to represent Samuel in all matters related to his education.
By fall 2006, Samuel was doing well. In November, Samuel was placed in a foster home. The placement lasted only four days because Samuel hit the foster parent's children, pushed the two-year-old child down the stairs and threatened the foster mother when she would not give him a cookie for breakfast. Samuel was returned to the group home at the San Diego Center for Children.
Although Samuel did well on his return to the group home, by the spring of 2007 his behavior had deteriorated. He climbed on the roof of the group home and spent the night there. He assaulted a student on the schoolbus *Page 508 
twice. In June 2007, Samuel was hospitalized twice under section 5150 as a danger to himself and others. After his release the second time, Samuel refused to return to the San Diego Center for Children group home and was detained at Polinsky Children's Center.
In September, Agency placed Samuel at the Victor Youth Services group home in Redding, California. In December, So visited Samuel in Redding and celebrated his 13th birthday. So reported Samuel seemed happier and more relaxed in his new group home. She also said that although Samuel continued to have behavior issues, the incidents had decreased.
In February 2008, the social worker reported Samuel was making progress at the Redding group home with his academics, behavior, communication skills and overall attitude. The social worker and the CASA made similar reports in the ensuing months.
In August, at a postpermanency hearing, Samuel's attorney asked the court to order Agency to pay for quarterly visits to Redding by So. The court set a hearing to explore available funding sources.
The social worker reported that although Agency supported So's wish to visit Samuel, it expected VFC, as operator of the CASA program in San Diego County, to pay for So's travel. In a letter to the court, the VFC director stated the group had limited funding. The director also noted the group had no control over where children are placed and suggested Agency should be required to pay the CASA's travel to allow her to maintain her relationship with the child.
On October 8, the court ordered Agency to pay for So's travel expenses to visit Samuel because she was Samuel's court-appointed educational representative.
 DISCUSSION
Agency contends the court's order that it pay for CASA So's travel expenses to Redding should be reversed because it violated the separation of powers doctrine of the California Constitution and was an improper gift of public funds. Agency insists on characterizing the order as requiring it to pay So for travel expenses in her capacity as Samuel's CASA. In fact, the order *Page 509 
required Agency to pay So's travel expenses in her separate and distinct role as Samuel's educational representative.
Overview
(1) The law recognizes the vital role that education plays in today's society. (Jonathan L. v. Superior Court (2008) 165 Cal.App.4th 1074,1089 [81 Cal.Rptr.3d 571].) "This role, we believe, has two significant aspects: first, education is a major determinant of an individual's chances for economic and social success in our competitive society; second, education is a unique influence on a child's development as a citizen and his participation in political and community life." (Serrano v. Priest (1971) 5 Cal.3d 584, 605 [96 Cal.Rptr. 601,487 P.2d 1241].) It is "the lifeline of both the individual and society." (Ibid.) "[T]he distinctive and priceless function of education in our society warrants, indeed compels, our treating it as a `fundamental interest.'" (Id. at pp. 608-609, fn. omitted.) Our state Constitution alludes to the importance of education: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement." (Cal. Const., art. IX, § 1.) Our Supreme Court has held that the state is responsible for educating all children within its borders. (Butt v. State of California (1992) 4 Cal.4th 668, 674 [15 Cal.Rptr.2d 480, 842 P.2d 1240].) "`. . . In view of the importance of education to society and to the individual child, the opportunity to receive the schooling furnished by the state must be made available to all on an equal basis. . . .'" (Id. at p. 680.)
This responsibility for education extends to children who are dependents of the juvenile court. "The juvenile court should: [¶] (1) [t]ake responsibility, with the other juvenile court participants at every stage of the child's case, to ensure that the child's educational needs are met, regardless of whether the child is in the custody of a parent or is suitably placed in the custody of the child welfare agency or probation department and regardless of where the child is placed in school. . . . [¶] (2) [p]rovide oversight of the social service and probation agencies to ensure that a child's educational rights are investigated, reported, and monitored. . . ." (Cal. Stds. Jud. Admin., § 5.40(h)(1).)[5]
Legal Principles
(2) Among the constitutional privileges enjoyed by parents is the right to determine how their children should be educated. "The liberty interest . . . of *Page 510 
parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." (Troxel v. Granville (2000) 530 U.S. 57, 65
[147 L.Ed.2d 49, 120 S.Ct. 2054].) In dependency proceedings, however, those rights may be limited. The fundamental premise of dependency law is to serve the best interests of the dependent child. (In re Luke M. (2003)107 Cal.App.4th 1412, 1424 [132 Cal.Rptr.2d 907].) After a child is brought into the dependency system through the parents' neglect or abuse, a parent's constitutional rights to raise his or her children, including the right to make education choices, may be curtailed. (SeeJonathan L. v. Superior Court, supra, 165 Cal.App.4th at pp. 1103-1104; see also In re Marilyn H. (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544,851 P.2d 826] [not every parent enjoys full extent of constitutional rights to raise his or her children because a child's welfare is a compelling state interest a state must protect].)
(3) The juvenile court may issue reasonable orders for the care, supervision, custody, conduct, maintenance and support of each child under its jurisdiction, including orders addressing the child's education. (§§ 202, subd. (b), 361, subd. (a), 362, subd. (a).) The court has the authority to limit the right of a parent to make educational decisions for a dependent child of the court if it appears the parent is unwilling or unable to do so. (§ 361, subd. (a); see also Cal. Rules of Court, [6] rules 5.650, 5.695(c).) When the court limits a parent's right to make educational decisions, it must appoint a responsible adult, who does not have a conflict of interest, to make those decisions. (§ 361, subd. (a).) In appointing a responsible adult to make educational decisions for a dependent child, the court must use Judicial Council form JV-535 (Findings and Orders Limiting Right to Make Educational Decisions for the Child, Appointing Educational Representative, and Determining Child's Educational Needs). (Rule 5.650(b).)[7] All educational decisions must be based on the best interests of the child. (10 Witkin, Summary of Cal. Law (10th ed. 2005) Parent Child, § 629, pp. 760-761.) The court may appoint a foster parent, relative caretaker, noncustodial relative, nonrelative extended family member or a CASA to make education decisions for the dependent child. (Rule 5.650(c)(1).)
(4) The educational representative's responsibilities include participating in and making decisions regarding all matters affecting the child's educational needs in a manner consistent with the child's best interests. (Rule *Page 511 
5.650(f)(2)(D).) The educational representative is required to meet with the child at least once and as often as necessary to make decisions that are in the best interests of the child. (Rule 5.650(f)(2)(A).) The educational representative acts as the parent in all educational matters regarding the child and has the right, among other things, to represent a child with exceptional needs in developing, reviewing and revising the child's IEP, to attend the child's IEP and other educational meetings, to consult with persons involved in the child's education and to give written consent to education-related services. (Rule 5.650(f)(3)(A), (C), (D).)
For children whose permanent plan is another planned permanent living arrangement, the court must consider the need for an educational representative at each postpermanency review hearing. (§ 366.3, subd. (e)(5).) The court also must determine the adequacy of the services provided to the child. (§ 366.3, subd. (e)(6).)
(5) Agency is charged with providing child welfare services to children and families who need them, including case management, counseling, teaching and transportation. (§§ 16500-16500.1, 16501, subd. (a)(1).) In permanent placement cases in which the child cannot be returned home and cannot be placed for adoption, services are intended to provide an alternate permanent family structure. (§ 16501, subd. (i).) Agency receives state, county and federal funding. Adequate services must include services to address the child's health and educational needs. Agency must include in the child's case plan a summary of the child's education information (§ 16010, subd. (a)), and must address this issue in subsequent reports. (§ 366.1, subd. (e).)
Analysis
Since July 2005, So has had two distinct roles in Samuel's dependency case. She has been Samuel's CAS A — a volunteer who provides independent information to the juvenile court about the case, represents Samuel's best interests, and monitors the case to ensure the court's orders have been fulfilled. In this regard, So, as Samuel's CASA, is an officer of the court. So's other separate function has been to serve as Samuel's educational representative — the person responsible for making decisions regarding all matters affecting Samuel's educational needs in a manner consistent with his best interests. *Page 512 
(6) The court ordered Agency to pay So's travel expenses to Redding in her capacity as Samuel's educational representative. The court did not order Agency to pay So's travel expenses to Redding in her role as Samuel's CASA.
(7) Were the challenged order for Agency to pay So's travel expenses as Samuel's CASA, the order would be improper, as Agency points out. Funding by local social services agencies for CASA programs and activities is limited under program guidelines promulgated by the Judicial Council and set forth in rule 5.655(k)(1)(A), (B), and (C). A CASA program may not receive funding from a social services agency unless there is a memorandum of understanding between the agency and the CASA program approved by the Administrative Office of the Courts. (Rule 5.655(k)(1).) No memorandum of understanding exists in San Diego County and, therefore, Agency cannot fund CASA programs and/or activities. However, the juvenile court's order was not to pay for a CASA activity. The order was to pay for the travel expenses of Samuel's educational representative.
Agency also argues the court order violates the separation of powers doctrine. The California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. Ill, § 3.) Noting that it largely operates independent of the court in fulfilling its executive functions as part of the county's government, Agency claims the court did not have authority to order an executive agency to pay So's travel expenses because a CASA is an arm of the court or judicial branch. Again, Agency is basing its argument on the premise that the order was to pay for the travel expenses of a CASA. The order was for Agency to pay for the travel expenses of Samuel's educational representative.
(8) In any event, the court order did not improperly invade the authority of the Agency to determine its expenditures. If appropriated funds are reasonably available for the expenditure in question, the separation of powers doctrine poses no barrier to a judicial order directing the payment of funds. (Mandel v. Myers (1981) 29 Cal.3d 531, 542
[174 Cal.Rptr. 841, 629 P.2d 935].) Agency is charged with providing adequate child welfare services to dependent children, including education services. (9) The juvenile court is charged with the responsibility to ensure that a dependent child's educational needs are met at every stage of the proceedings and to provide *Page 513 
oversight of the social services agencies to make certain the child's educational rights are investigated, reported and monitored. (Cal. Stds. Jud. Admin., § 5.40(h)(1).) The court exercised a legitimate judicial function to ensure the services of the educational representative would be delivered to the dependent child. In a case in which the dependent child has severe educational and behavior issues, the court properly exercises its discretion to ensure continuity by his or her educational representative in monitoring and advocating for the child's interests in, and rights to, a quality education.
(10) Agency also contends the order constituted an illegal gift of public funds. Section 6 of article XVI of the California Constitution provides the Legislature has no power "`to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation. . . .'" (Jordan v. Departmentof Motor Vehicles (2002) 100 Cal.App.4th 431, 450 [123 Cal.Rptr.2d 122].) "Gift" in this context "'includes all appropriations of public money for which there is no authority or enforceable claim,' even if there is a moral or equitable obligation." (Ibid.) If the public money is used for a private purpose, it is a gift; if it is used for a public purpose, there is no gift. (Ibid.) Here, there is a public purpose — ensuring the educational needs of a dependent child are met.
Agency relies on San Diego County Dept. of Social Services v. SuperiorCourt (2005) 134 Cal.App.4th 761, 765-767 [36 Cal.Rptr.3d 294], in which this court vacated a juvenile court's order that Agency pay an independent counsel to investigate the potential for a civil action on behalf of a 12-year-old dependent child who claimed he had been molested in a group home. Agency's reliance is not persuasive because that case is distinguishable under the case law, statutes and rules specific to the payment of counsel. (See Payne v. Superior Court (1976) 17 Cal.3d 908, 920, fn. 6 [132 Cal.Rptr. 405, 553 P.2d 565]; Bus. Prof. Code, § 6068, subd. (h); Super. Ct. San Diego County, Local Rules, rule 6.5.I.D.2.)[8] *Page 514 
 DISPOSITION
The order is affirmed.
McConnell, P. J., and Benke, J., concurred.
[1] Statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] A CASA is a volunteer who receives training from the local CASA program in, among other things, the dynamics of child abuse and neglect, the dependency system and report writing. (§ 102, subds. (b), (d).) The juvenile court may appoint a CASA when it concludes a child requires services that can be provided by the CASA. (§ 103, subd. (g).) A CASA is an officer of the court. (§ 103, subd. (e).) The role of the CASA is to provide independent information to the court regarding the case, represent the best interests of the child and monitor the case to assure the court's orders have been fulfilled. (§ 102, subd. (c).) In San Diego County, the local CASA program is operated by Voices for Children (VFC).
[3] "Surrogate" was a misnomer on the form used by the court. The term "surrogate," as in "surrogate parent," refers to the person appointed by the local educational agency to represent the dependent child in educational matters when the court is unable to identify a responsible adult to make educational decisions for the child. (See Gov. Code, §7579.5.)
[4] At the 18-month review hearing and at each postpermanency review hearing, the court ordered So to continue to represent Samuel in all matters related to his education.
[5] See section 202, subdivision (b), which provides in part: "Minors under the jurisdiction of the juvenile court who are in need of protective services shall receive care, treatment, and guidance consistent with their best interest[s] and the best interest[s] of the public."
[6] Rule references are to the California Rules of Court.
[7] If the court is unable to identify a responsible adult to make educational decisions for the court, it must refer the child to a local educational agency for appointment of a surrogate parent under Government Code section 7579.5. (§ 361, subd. (a); see also fn. 3, ante.)
[8] Under the circumstances presented in that case, including the potential for a conflict of interest because the county's public defender office represented the dependent child, we held the juvenile court should have appointed a guardian ad litem to investigate the potential for a civil lawsuit on behalf of the child. (San Diego County Dept. of SocialServices v. Superior Court, supra, 134 Cal.App.4th at p. 768.) A guardian ad litem is the appropriate person to seek independent counsel, on a pro bono or contingency basis, to investigate and prosecute any tort claims on the minor's behalf. (Id. at p. 769.) *Page 515