Filed 6/2/22  In re Gizelle D. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re GIZELLE D., a Person Coming Under the Juvenile Court Law. | B312601 (Los Angeles County Super. Ct. No. 20CCJP01942B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JERMAINE D., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge. Affirmed.

Andre F. F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

A father awaiting trial on criminal charges for molesting his stepchildren appeals the juvenile court's order limiting his educational and developmental decisionmaking rights over his biological, teenage daughter. We find no abuse of discretion in the court's order. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Jermaine D. (father) and Nicole D. (mother) are parents to daughter Gizelle (born January 2005).[1] Mother also has two adult children with other men: Kierra and Jonathan.

Though father "consider[ed] Jonathan and Kierra" to be "[his] children," father sexually abused each of them for much of their childhoods.[2] Between 2012 and 2019, when Kierra was age

---

[1] Father and mother are also parents to fraternal twins (born October 2006), but neither the twins nor their mother are parties to this appeal.

[2] Father also sexually abused his sister when they were minors.

2

10 to 17, father forcefully kissed her with his tongue; he touched, caressed, squeezed, and tried to suck her breasts nearly every day, claiming that he was examining her for breast cancer; he regularly forced Kierra to masturbate him; and he orally copulated her, even when she was asleep. Gizelle walked in on father fondling Kierra's breasts on one occasion. When Jonathan was around the same age that Kierra was when she suffered abuse by father, father repeatedly molested Jonathan by making him watch pornography while masturbating father; by making Jonathan orally copulate father; and by attempting to anally penetrate Jonathan. Kierra and Jonathan told their mother several times that father was abusing them, but mother refused to believe them. They also told their siblings what father had done to them.

## II. Procedural Background

### A. *Petition, jurisdiction, and removal*

Pursuant to a petition filed in April 2020 by the Los Angeles Department of Children and Family Services (the Department), the juvenile court exerted dependency jurisdiction over Gizelle in October 2020 under Welfare and Institutions code section 300,[3] subdivisions (b), (d), and (j), because father's sexual abuse of Kierra was "so persistent and so pervasive and so aberrant that" Gizelle was "at risk as well." Gizelle was removed from both parents.

Father and mother appealed the juvenile court's jurisdictional and dispositional findings. We affirmed those findings in an unpublished opinion, but remanded the matter to the juvenile court for further proceedings in compliance with the

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Indian Child Welfare Act (25 U.S.C. § 1901 et seq.).  (*In re Gizelle D.* (Sept. 9, 2021, B308580).)

### B.   *Gizelle's progress*

These egregious events had a serious impact on Gizelle, both before and after she was declared a dependent of the court.

Before the Department filed the petition in this case, Jonathan told Gizelle that he was ready to report father's abuse; Gizelle shared that she "might tell a lot too."  Though Gizelle did not make any reports of abuse by father, Jonathan believed something had happened to her.  In 2018, when Gizelle was 13 years old and while Kierra was being subjected to father's abuse, Gizelle started cutting herself but would not share what was troubling her.  This left scars on Gizelle's forearms that were discovered in a medical examination conducted in 2020.  Gizelle also used to beg mother to let her stay with maternal grandmother and not return home.  Maternal grandmother observed that "[t]here are things Gizelle will not say"; she "start[s] to say something and then just close[s] up."

Gizelle continued to struggle during the dependency proceedings.  Though she was not a client of a regional center and did not have an individualized education program (IEP), Gizelle earned failing grades in four out of seven of her tenth-grade classes.  She participated in therapy, but missed sessions and was still addressing reducing her "verbal aggression" and increasing her "positive communication skills."

Gizelle actively avoided communicating with father.  He has been incarcerated since April 2020 pending trial on charges of committing lewd and lascivious acts upon a minor (Pen. Code, § 288).  The juvenile court authorized father to have monthly in-person visits with Gizelle and his other children while in custody,

but lockdowns related to COVID-19 and other restrictions precluded any in-person visitation. And while the court also authorized father to have weekly monitored phone calls with the children, he waited more than one month to arrange a call schedule. Father called when he was able, but on at least two occasions Gizelle went into the bathroom to avoid having to talk to him during his calls.

### C. *Limitation on father's educational rights*

At a six-month review hearing on April 29, 2021, Gizelle's counsel requested, consistent with her wishes, that Gizelle's current caregiver—a maternal aunt—be designated as the sole holder of educational and developmental decisionmaking rights over Gizelle. Over father and mother's objections, the juvenile court issued an order limiting both parents' educational and developmental rights. The court explained that it was "reasonable . . . to rely on" 16-year-old Gizelle's preference, and that it was "certainly . . . difficult to contact [father] right away" to make decisions on behalf of Gizelle.

### D. *Appeal*

Father filed this timely appeal.

## DISCUSSION

Father argues the juvenile court erred in designating the maternal aunt as the sole holder of Gizelle's educational and developmental rights.[4]

---

4    Subsequent to father's filing of this appeal, mother became coholder of those rights with maternal aunt in June 2021, and then the exclusive holder of those rights when Gizelle was returned to mother's custody in January 2022. (Cal. Rules of Court, rule 5.650(e)(1).) Father's appeal remains "live" because

## I.    Governing Legal Principles

Although a parent has a "constitutionally protected liberty interest in directing [his] children's education" (*In re R.W.* (2009) 172 Cal.App.4th 1268, 1276 (*R.W.*)), the juvenile court has the power to "limit" a parent's "control to be exercised over" decisions regarding a dependent child's "educational or developmental services" (§ 361, subd. (a)(1); Cal. Rules of Court, rule 5.649(a)).[5]

To be substantively valid,[6] any limitation on a parent's right to make educational and developmental decisions for a child

---

his educational and developmental rights over Gizelle have not been restored.

[5]    These provisions apply when, as occurred here, the juvenile court issues the order limiting a parent's decisionmaking authority over a child's education or development at the dispositional hearing or any subsequent review or permanency hearing.  Section 319 provides the statutory authority empowering a juvenile court to limit a parent's authority at the initial hearing on the petition or any time *before* the court adjudges the child a dependent.  (§ 319, subd. (j); Cal. Rules of Court, rule 5.649(b).)  Although the juvenile court on its form order in this case checked the box for section 319, subdivision (j), this error is of no moment because our task is to review the court's ruling limiting father's educational and developmental decisionmaking rights, not the court's reasoning.  (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12; *People v. Zamudio* (2008) 43 Cal.4th 327, 351, fn. 11; *People v. Zapien* (1993) 4 Cal.4th 929, 976.)

[6]    To be *procedurally* valid, the limitation on a parent's right to make educational and developmental decisions for his child must be "specifically addressed" in a court order.  (§ 361, subd. (a)(1).)  The juvenile court satisfied this procedural requirement in this case.

6

who has been declared a dependent must (1) like all dispositional orders, "not exceed" what is "necessary to protect the child" (§ 361, subd. (a)(1)); and (2) like all juvenile dependency orders, be in the "best interest" of the child (§ 202, subd. (b); *In re Samuel G.* (2009) 174 Cal.App.4th 502, 510 (*Samuel G.*); see generally *In re Venus B.* (1990) 222 Cal.App.3d 931, 935 [policy in section 202 "must guide" decisions in dependency law].)  What must be protected is not the physical safety of the child, but rather the educational and developmental well-being of the child.  Orders limiting a parent's decisionmaking rights have been found to be necessary to protect a child and in the child's best interest (1) where the child faces educational and developmental challenges, and the parent has "never shown good judgment in making decisions" regarding the child (*R.W.*, *supra*, 172 Cal.App.4th at p. 1278); (2) where the parent is "unwilling or unable" to provide responsive input or be involved in making decisions regarding the child's services (*Samuel G.*, at p. 510; § 366.1, subd. (e)); and (3) where the child, particularly an older child, expresses her wishes that another caregiver be appointed as the decisionmaker (see *In re Michael D.* (1996) 51 Cal.App.4th 1074, 1087 (*Michael D.*) [child's wishes constitute "powerful demonstrative evidence" regarding what is in child's best interest]).

We review a juvenile court's order limiting a parent's educational and developmental decisionmaking rights over a dependent child for an abuse of discretion (*R.W.*, *supra*, 172 Cal.App.4th at p. 1277), and review any subsidiary factual findings for substantial evidence (*In re T.V.* (2013) 217 Cal.App.4th 126, 136).  Applying these standards of review, we may not substitute our decision for that of the juvenile court, and may reverse an order only if the court "exceeded the bounds of

7

reason." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319 (*Stephanie M.*).)

## II.    Analysis

Although the juvenile court could have reasonably reached a contrary conclusion, we conclude that the court did not exceed the bounds of reason when it limited father's right to make educational and developmental decisions for Gizelle, as all three factors identified in the pertinent caselaw are present here.

To begin, substantial evidence supports a finding that Gizelle was facing significant educational and developmental challenges and that father had not "shown good judgment in making [parenting] decisions." (*R.W.*, *supra*, 172 Cal.App.4th at p. 1278.)  Gizelle was certainly facing educational and developmental challenges:  She had witnessed at least one instance of father's sexual abuse of her half-sister and had subsequently engaged in self-harming behavior; by the time the juvenile court entered its order, Gizelle was struggling in school and had a ways to go in therapy as well.  There is no question that father demonstrated extraordinarily poor judgment regarding the well-being of the children in his care:  Father's sexual abuse of Kierra and Jonathan constitutes "'aberrant sexual behavior'" "'in the extreme'" and demonstrates a complete abandonment of his parental role, an abandonment that also placed Gizelle at substantial risk of harm.  (*In re I.J.* (2013) 56 Cal.4th 766, 778; see *Los Angeles County Dept. of Children & Family Services v. Superior Court (In re A.C.)* (2013) 215 Cal.App.4th 962, 969.)

Further, father is unable and, to a degree, unwilling to provide meaningful input and involvement in making educational and developmental decisions for Gizelle.  To be sure, father's

8

inability is due in part to the fact that he is in custody. "There is no 'Go to jail, lose your child' rule in California" (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1077), which suggests the corollary that a parent does not *automatically* forfeit all decisionmaking rights over a child merely because he is incarcerated. But this corollary does not compel a court to ignore the practical reality that a parent's incarceration makes it increasingly difficult—and sometimes impossible, as shown by the periodic lockdowns of father's facility—for a parent to be able to participate in making educational and developmental decisions, at least where, as here, that inability is coupled with an unwillingness to be involved. Here, father has demonstrated some unwillingness to be involved in Gizelle's upbringing insofar as he moved slowly in setting up telephonic visits and thereafter missed some scheduled calls.

Lastly, Gizelle's wishes—while not dispositive—are still entitled to some weight. (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432 ["While a child's wishes are not determinative of her best interests, the child's testimony . . . constitutes powerful demonstrative evidence" of her "best interest"]; *Michael D.*, *supra*, 51 Cal.App.4th at p. 1087 [same]; accord § 366.26, subd. (c)(1)(B) [objection of child over age 12 to termination of parental rights is "compelling reason" for determination that termination would be detrimental to child].) Her wishes have some additional heft to them because they are based in part on the understandably damaged relationship between Gizelle and father, which would make conferring on educational and developmental decisions more contentious if not downright impossible (given Gizelle's efforts to avoid speaking with father).

9

Viewing these facts in their totality, the juvenile court did not abuse its discretion in limiting father's educational and developmental decisionmaking rights over Gizelle.

Father raises what boils down to six arguments in response.

First, father argues that the factual justification for limiting his educational and developmental rights in this case pales in comparison to the justifications proffered in *R.W.*, *supra*, 172 Cal.App.4th 1268, and *In re D.C.* (2015) 243 Cal.App.4th 41 (*D.C.*), superseded by statute on other grounds as stated in *In re A.M.* (2020) 47 Cal.App.5th 303, 322. Undoubtedly, those cases involved more extreme facts than are present here. In *R.W.*, the child "suffered from severe emotional and behavioral problems," those problems necessitated an immediate decision regarding whether to place the child in an out-of-state residential facility, and the parent whose rights were curtailed was dragging her proverbial feet and objecting to that critically important placement. (*R.W.*, at p. 1277.) In *D.C.*, the parent whose rights were curtailed was placing harassing calls to the child's school. (*D.C.*, at pp. 58-59.) Contrary to what father asserts, however, *R.W.* and *D.C.* do not purport to set the minimum factual showing necessary to curtail a parent's educational rights. That minimum factual showing is defined by the statutory standard, and by the factors subsequently identified by the courts as bearing on that standard; as explained above, our analysis of those factors confirms the propriety of the juvenile court's order in this case.

Second, father argues that there was insufficient evidence to support limiting his educational and decisionmaking rights over Gizelle. Father starts by noting that Gizelle's counsel did

not cite any specific evidence in the record at the time she requested a limitation on father's decisionmaking authority, but this is irrelevant: What matters to our review is what evidence is in the record, not whether counsel cited those portions of the record to the juvenile court. (See *In re Isabella F.* (2014) 226 Cal.App.4th 128, 137-138.) Father next asserts that there was no evidence that he had previously made poor decisions regarding Gizelle's educational well-being and, more broadly, no evidence that father was "an unfit parent" (*R.W.*, *supra*, 172 Cal.App.4th at p. 1278). This assertion misreads the pertinent law and the record. The law requires that a parent have exercised poor "judgment in making decisions" regarding the child, not poor judgment *in education-related decisionmaking*. (Accord, *R.W.*, *supra*, 172 Cal.App.4th at pp. 1271-1272, 1278 [parent's poor "judgment" included not only "protest[ing]" against counseling for child and failing to cooperate with IEP, but also leaving child with abusive relative to go on a trip to Las Vegas].) We decline to read such a requirement into the law. And the record refutes father's assertion that no evidence supports a finding that he is an "unfit parent": He sexually molested his two stepchildren for years. Father then concludes by claiming that he has been cooperative with the Department, but father's cooperation on some fronts does not undercut the allegations that gave rise to this case and does not cure his more recent lack of interaction with Gizelle, and it is *those* areas—the underlying allegations and the lack of interaction with Gizelle—that are more pertinent to limiting father's educational and developmental rights.

Third, father argues that the limitation on his decisionmaking rights is *currently* improper because the circumstances have changed since the juvenile court issued its

11

order in April 2021.  Specifically, father notes that Gizelle has been returned to mother's care and asserts (without evidentiary support) that the pandemic-related restrictions at his place of incarceration have been relaxed.  As a result, father concludes, he can now more easily be consulted on educational and developmental decisions for Gizelle.  Father's argument is misplaced because our job is to review the propriety of the juvenile court's order *at the time it was issued* (cf. *In re M.M.* (2015) 240 Cal.App.4th 703, 719 [jurisdictional finding turns on risk to the child at time of the hearing]), not to assess whether the order would be valid under the changed factual circumstance that may or may not exist today.

Fourth, father argues that the juvenile court erred in limiting his decisionmaking rights because, in his view, such rights should not be limited so long as a parent is still receiving reunification services.  We reject father's view that a limitation-order is premature unless and until reunification services are terminated.  To the contrary, the law specifically empowers a juvenile court to limit a parent's educational and developmental decisionmaking rights during the reunification phase of the proceedings.  (§ 366, subd. (a)(1)(C) [requiring court to consider, during reunification review hearings, "[w]hether there should be any limitation on the right of the parent . . . to make educational decisions or developmental services decisions for the child"].)

Fifth, father argues that the request to limit his decisionmaking rights over Gizelle was initially requested by Gizelle rather than the Department.  The origin of the request is irrelevant because, as noted above, our job is to review the propriety of the juvenile court's order.  Its propriety does not turn on who requested that order.

12

Sixth, father argues that the juvenile court should have, at a minimum, made him a coholder with maternal aunt of the right to make educational and developmental decisions for Gizelle. Father does not explain why being a coholder would alter our analysis. If being a coholder means that *both* holders (father and maternal aunt) must agree on decisions, then either would have an effective "veto" power; under this interpretation, father would effectively be the sole rights holder, and father's argument is nothing more than a collateral attack on the limitation of his rights that we have found sufficient. If being a coholder means that *either* holder may make a decision on his or her own, then father would effectively have no rights; yet this is precisely the order that the juvenile court entered, and that we have upheld.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ


13