Filed 10/29/25  In re Audrey R. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| IN RE AUDREY R., | B342070 c/w B343549 |
| A Person Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 24CCJP02946A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Appellant, | |
| v. | |
| BRENT R., | |
| Defendant and Appellant. | |
| LYNDA R., | |
| Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Tara L. Newman, Judge. Affirmed in part and reversed in part.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Appellant.

Law Offices of Emery El Habiby and Emery F. El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Law Office of Marissa Coffey and Marissa Coffey, under appointment by the Court of Appeal, for Respondent.

\* \* \* \* \* \*

In this consolidated opinion, we consider the appeals of Brent R. (father) and the Los Angeles County Department of Children and Family Services (the Department), each of whom challenge aspects of the juvenile court's exertion of dependency jurisdiction over father's teenage daughter. Father attacks (1) the portion of the juvenile court's jurisdiction order sustaining an allegation that he is an offending parent, on the ground the allegation was amended to name him an offending parent for the first time at the jurisdiction hearing, (2) the portion of the juvenile court's disposition order removing his daughter from his custody, and (3) the portion of the juvenile court's subsequent order limiting his educational and developmental decision-making rights such that the teenager's mother—without father's consent—was empowered to enroll the teenager in a mental

2

health treatment program.  The Department challenges the portion of the juvenile court's jurisdiction order dismissing an emotional abuse allegation against the mother.  We reject all of these challenges except father's due process-based challenge to the late-amended allegation.  We accordingly affirm in part and reverse in part.

FACTS AND PROCEDURAL BACKGROUND

I.      Facts

A.      *The family*

Father and Lynda R. (mother) married in 2006 and have one child together, Audrey R. (born November 2008).  After mother discovered that father was having an extramarital affair, father moved out of the family home in November 2020 and mother filed for divorce in June 2021.

B.      *The parents' custody dispute and Audrey's mental health struggles*

Between 2021 and 2024, Audrey became increasingly afflicted with social anxiety, general anxiety, factitious disorder and psychosomatic symptoms like constipation, stomach pain, joint/back pain and spinal pain.

Mother enabled Audrey's worsening condition.  While Audrey was ultimately treated for obsessive compulsive disorder, mother's conduct caused practitioners to initially evaluate Audrey for Munchausen Syndrome by Proxy.  Specifically, mother socially isolated Audrey by pulling her out of regular school for home school and then placing her in a hybrid continuation school, but obtained doctors notes excusing Audrey from classes and extracurricular activities; she acquiesced to Audrey's requests to be evaluated by more than 40 doctors to address Audrey's fears of various physical ailments; she placed

3

Audrey in therapy with multiple therapists but "sabotag[ing]" that therapy by "enmesh[ing]" herself with Audrey to the point where Audrey parroted the language contained in a barrage of "aggressive and intrusive" emails that mother sent to Audrey's therapists; and she repeatedly reneged on promises to have Audrey visit father (at one point preventing any visits for more than two years) and promises to curtail appointments that interfered with Audrey's school schedule. As a result, Audrey's symptoms worsened and she expressed that she felt "triggered" and anxious around father, often refused to look at him during video visits, and even threatened to run away if ever placed in his custody.

Father also played a role in Audrey's worsening condition by being "aggressive with" Audrey's medical providers and therapists, calling them repeatedly for information, labeling them "grossly incompetent" and even going so far as to sue one of them for poisoning his relationship with Audrey.

In sum, the family's dynamics were "negative, dysfunctional, and destructive."

## II.    Procedural Background

### A.    *The petition*

On September 17, 2024, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over Audrey on the ground that *mother* had created a "detrimental and endangering" environment stemming from the parents' "ongoing custody dispute," in that mother had taken Audrey to "over forty medical providers," "exposed [Audrey] to ongoing conflict with [] father," and "interfered with [] father's communications and visits" with Audrey, thereby warranting dependency jurisdiction under subdivisions (b) and (c) of the

4

Welfare and Institutions Code section 300.[1]  The petition did not allege that *father* had contributed to the detrimental and endangering environment.

### B.  *Jurisdiction and disposition*

The juvenile court held the combined jurisdiction and disposition hearing on November 6, 2024.

At the hearing, the Department asked the court to continue the hearing so it could file an amended petition that added a new subdivision (b) allegation listing father as an offending parent due to his "accusations that [] mother [wa]s abusing and neglecting" Audrey during the custody dispute.  The Department requested a continuance because it had first mentioned adding father as an offending parent at a settlement conference two days earlier and had sent a copy of the proposed amended petition— but not filed it—the day before the hearing.  When the juvenile court denied the continuance request, the Department asked the court to "conform" the original petition "to proof" by interlineating the existing subdivision (b) allegation by replacing the language listing "mother" as the offending party with "the parents."  The court granted that request and sustained the modified count over father's objection.  The court dismissed the

---

1    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The original petition also contained an allegation under subdivision (b) of section 300 that mother's "unresolved history of mental and emotional problems, including a diagnosis of Anxiety and Narcissistic Personality Disorder" had "interfere[d] with [] mother's ability to provide regular care and supervision of" Audrey, but the juvenile court ultimately dismissed that allegation and the Department's appeal does not challenge that ruling.

identical count under subdivision (c) of section 300 against mother.

The juvenile court then ordered Audrey removed from both parents, finding there was clear and convincing evidence that placement with either parent would pose a "substantial danger" to Audrey's "emotional well-being."[2] The court ordered reunification services and monitored visitation for both parents.

**C.** ***First appeal by father and cross-appeal by the Department***

Father timely appealed the jurisdiction and disposition orders; mother did not appeal. The Department filed an appeal seeking to reinstate the allegation against mother under subdivision (c) of section 300.

**D.** ***Audrey's discharge, placement, and father's refusal to consent to treatment***

On December 18, 2024, Audrey was discharged from a residential mental health treatment facility after completing a 90-day treatment program. Her assigned therapist noted that she had made "remarkable progress," but insisted that it was "crucial" she continue to receive intensive therapeutic services "to mitigate risk of relapse," beginning with a partial hospitalization program (PHP). Audrey's care team at the residential treatment facility identified Hillsides Cares (Hillsides) as an appropriate PHP placement for Audrey's continued care.

---

[2] Mother requests that we take judicial notice of a May 29, 2025 minute order following a review hearing where the juvenile court continued jurisdiction and declined to return Audrey to either parent. We deny mother's request because the minute order is irrelevant to our resolution of these consolidated appeals.

Following her discharge, the Department placed Audrey with her maternal grandparents, subject to a set of conditions limiting mother's interactions with Audrey and requiring that all maternal relatives help ensure the parents complied with their case plans. The maternal grandparents immediately began the process of enrolling Audrey with Hillsides; mother consented to her enrollment, but father did not. Instead, over the next month, father continued to refuse consent and sent five separate emails to the Department accusing it of, among other things, "dishonesty," "deliberately concea[ling] information," "bias," "obstruction," "negligent placement decisions," and "deliberate exclusion." Father often refused to answer the Department's phone calls, insisting on communicating by email, which hindered the Department's ability to schedule meetings and involve him in decision making.

Audrey received no therapeutic services during this time.

### E. *Limitation of father's right to consent to Audrey's treatment at Hillsides*

The juvenile court held a hearing on Audrey's progress on January 15, 2025. At that hearing, Audrey's counsel reported that father was objecting to Audrey completing the intake process at Hillsides and requested that the court limit father's educational and developmental decision-making rights so that Audrey could begin the intake process; the Department joined in that request. Father objected, arguing that Hillsides was not an appropriate placement and that the Department had not sufficiently involved him in its decision making. The Department responded that father had been unresponsive and obstructive when it attempted to involve him, taking a "'my way or the highway'" approach; the Department reiterated to the court that

7

it was in Audrey's best interest to be assessed for treatment at Hillsides as soon as possible.

The juvenile court granted the request to "limit" father's decision-making rights to the extent necessary to "complete the intake" process at Hillsides. In explaining its reasoning, the court noted that the Department had attempted on multiple occasions to schedule with father and to accommodate his requests, that Hillsides had been recommended by the care team at Audrey's residential treatment program (which father initially selected), that father's objections to the program were seemingly based only on his own opinions rather than any medical advice, and that it was "concerning" that Audrey had "not been in any services since her discharge, which has been several weeks."

A week later, on January 22, 2025, the court entertained a "walk-on" request by Audrey's counsel.[3] Because Hillsides would not proceed without both parents' consent, the court ordered that mother "may provide sole consent for mental health treatment" but that father be kept apprised of Audrey's services and treatment.

### F. *Second appeal by father*

Father timely appealed the limitation of his educational and developmental decision-making rights, and we consolidated the appeals.[4]

---

[3] We grant the Department's request for judicial notice of the walk-on order issued on January 22, 2025, clarifying the scope of the limitation of father's decision-making rights. (Evid. Code, §§ 452, subd. (a), 459.)

[4] We grant father's request for judicial notice of the record in his third-filed appeal case no. B346755, and which we did not consolidate with father's first two appeals. That record shows

## DISCUSSION

## I. Challenges to Jurisdiction Orders

### A. *Father's challenge to the allegation that he contributed to the detrimental and endangering environment*

Father argues that the juvenile court violated his due process rights by sustaining the subdivision (b) allegation of jurisdiction *against him as an offending parent* when it conformed the petition to proof at the jurisdiction hearing. The Department concedes this violation, and this concession is well taken.

"Parents have a compelling interest in the companionship, care, custody, and management of their children, which is 'ranked among the most basic of civil rights,'" and they must accordingly be provided with adequate notice and an opportunity to be heard before a dependency petition is adjudicated against them. (*In re S.V.* (2022) 86 Cal.App.5th 1036, 1038, 1048-1049 (*S.V.*); *In re I.S.* (2021) 67 Cal.App.5th 918, 926-927 (*I.S.*); *In re G.B.* (2018) 28 Cal.App.5th 475, 487 (*G.B.*).) Thus, while a juvenile court may make minor amendments to a petition at a jurisdiction hearing to conform to proof (§ 348; Code Civ. Proc., § 470; *I.S.*, at p. 927), "material amendments that mislead a party

that on February 20, 2025, after father appealed the limitation of his educational and developmental decision-making rights, the juvenile court issued a further clarifying order that removed the specific reference to Hillsides in authorizing mother to provide sole consent for Audrey's mental health treatment. That record also shows that "the delay caused by father" in refusing to consent to Hillsides resulted in Audrey "no longer qualifying" for that PHP and that mother ultimately enrolled Audrey in school, where she was having a "great experience."

9

to his or her prejudice are not allowed" (*I.S.*, at p. 927; *In re Andrew L.* (2011) 192 Cal.App.4th 683, 689).  A juvenile court violates a parent's right to due process when it amends a petition to list a previously nonoffending parent as offending without providing that parent adequate notice and an opportunity to defend against the new charges; in that instance, the jurisdiction finding must be reversed.  (*S.V.*, at pp. 1048-1051; see also *G.B.*, at pp. 487-488.)

Here, the juvenile court violated father's due process right to adequate notice when it interlineated the petition to add father as an offending parent on the subdivision (b) allegation at the jurisdiction hearing.  This was a "material amendment" to the allegation, of which father had insufficient notice.  The amended petition the Department proffered the day before the jurisdiction hearing was not identical to the allegation actually sustained by the juvenile court, and the precise language of the Department's suggestion that father be added to the petition two days before the hearing is not part of the record; the Department's concession of error indicates a significant difference there as well.

In light of this analysis, we have no occasion to reach father's further argument that substantial evidence does not support a finding that he was an offending parent.

**B.**     *The Department's challenge to the juvenile court's dismissal of the subdivision (c) allegation against mother*

In its appeal, the Department argues that the juvenile court erred in dismissing the allegation that mother's conduct constituted emotional abuse of Audrey under subdivision (c) of section 300.  Because the juvenile court sustained the subdivision (b) allegation against mother that supported the exertion of

10

dependency jurisdiction over Audrey, because that count is unchallenged, and because one sustained allegation is legally sufficient to maintain jurisdiction (*In re D.P.* (2023) 14 Cal.5th 266, 284 (*D.P.*); *In re I.J.* (2013) 56 Cal.4th 776, 773), our consideration of the Department's challenge to the identical factual allegation under a different subdivision of section 300 will have no effect on the court's exertion of jurisdiction and we decline to reach that non-justiciable challenge. (*D.P.*, at p. 276.)

## II. Removal Order

Father next argues that there was insufficient evidence to support the juvenile court's order removing Audrey from his custody. Once a juvenile court has exerted jurisdiction over a child, it may remove that child from a parent "with whom the child did not reside at the time the petition was initiated" upon a finding of "clear and convincing evidence" that placing the child with that parent would pose "a substantial danger to the . . . physical or emotional well-being of the child" unless there are "reasonable means" to avoid that danger short of removal. (§ 361, subd. (d); Cal. Rules of Court, rule 5.695(c) & (d).)[5] We review the juvenile court's removal order for substantial evidence, keeping in mind the heightened burden of proof. (*In re L.O.* (2021) 67 Cal.App.5th 227, 245 (*L.O.*); *In re V.L.* (2020) 54 Cal.App.5th 147, 154-155.)

---

[5] Section 361.2 provides for the placement of a child with a non-custodial parent unless such placement would be "detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) This standard is functionally similar to the standard set forth in section 361, subdivision (d). (E.g., *In re S.F.* (2023) 91 Cal.App.5th 696, 720, fn. 14 (*S.F.*).)

11

Substantial evidence supports a finding, by clear and convincing evidence, that placing Audrey with father would pose a "substantial danger to [her] physical or emotional well-being" and that "no reasonable means" short of removal would avoid that danger. (§ 361, subd. (d).) As a threshold matter, our ruling vacating the jurisdiction finding that names father as an offending parent is not dispositive of the removal question. (*L.O.*, *supra*, 67 Cal.App.5th at p. 244; *S.F.*, *supra*, 91 Cal.App.5th at p. 718, fn. 13; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491-1492.) More to the point, substantial evidence supports removal. At the time of the disposition hearing, Audrey faced substantial danger to her physical or emotional well-being if placed in father's custody: Audrey repeatedly expressed that father "triggered" her and was a source of her stress, anxiety, and the physical pain associated with those mental conditions; Audrey repeatedly indicated that she would run away if placed with father; and Audrey's mental health was fragile and she had only begun to make progress in the residential treatment facility, such that returning her to father's custody was likely to undo that progress and reignite the issues that brought Audrey before the court in the first place.

Father resists this conclusion. He urges that Audrey's fragility was *mother's fault*, and thus the Department cannot provide a basis for removal *from him*. But the removal inquiry focuses on danger to the child's well-being, regardless of its original source. (*L.O.*, *supra*, 67 Cal.App.5th at p. 245.) Father argues that the record also contains evidence that Audrey was *not* afraid of him, but this conflicting evidence does not negate the substantial evidence to the contrary. (See, e.g., *In re Madison S.* (2017) 15 Cal.App.5th 308, 321.) And father contends that

reasonable means short of removal would suffice because, after Audrey was released from a treatment facility and into father's care, father could find another place for Audrey to live other than with him. However, the record indicates that father had already tried to find an alternative living arrangement and failed, making it reasonable for the juvenile court to conclude that placing Audrey in father's custody would place her in his home— which would exacerbate her condition and forestall her recovery.

## III. Subsequent Order Limiting Father's Educational and Developmental Decision-making Rights

Father argues that the juvenile court abused its discretion when it limited his educational and developmental decision-making rights to the extent necessary to permit Audrey to complete the intake process and enroll in Hillsides with only mother's consent.

While a parent has a "constitutionally protected liberty interest in directing their children's education" and development (*In re R.W.* (2009) 172 Cal.App.4th 1268, 1276 (*R.W.*)), once a juvenile court exerts jurisdiction over a child, it is empowered to make orders that "limit the control to be exercised over the dependent child by *any* parent" including limiting "the right of the parent . . . to make educational or developmental services decisions for the child," as long as those limits are in the child's best interest and do "not exceed" what is "necessary to protect the child." (§ 361, subd. (a)(1) (italics added); see also § 726; *R.W.*, *supra*, at pp. 1276-1277; *In re Samuel G.* (2009) 174 Cal.App.4th 502, 510.) We review the decision to limit a parent's educational

13

and developmental rights for an abuse of discretion. (*R.W.*, at p. 1277.)[6]

The juvenile court did not abuse its discretion in limiting father's decision-making rights over Audrey to the extent necessary to allow her to complete the intake process and enroll at Hillsides with only mother's consent. The court had an ample basis to find that Audrey's treatment at Hillsides was in her best interest: Audrey had completed her program at the residential treatment facility (which father had originally selected), that facility "strongly recommended" that Audrey continue her therapy at the PHP Hillsides facility, father's opposition to Hillsides was based largely on his own opinion,[7] and it was

---

[6] Orders limiting a parent's educational and developmental decision-making rights are appealable. (§ 395, subd. (a) ["any" order "subsequent" to the dispositional order "may be appealed as an order after judgment"]; *R.W.*, *supra*, 172 Cal.App.4th at p. 1277.)

[7] The record in father's third appeal, B346755, of which we have taken judicial notice as requested by father, contains several emails from father in late December 2024, in which he relays oral conversations he allegedly had with the "Division Chief" at Hillsides, who allegedly "acknowledged that Hillsides is not a good fit for Audrey's needs" because it is a "general program" and not "designed to address the underlying issues" affecting Audrey. Even if we credit this hearsay, it conflicts with minor's counsel's representations that the same Hillsides "Division Chief" stated that Hillsides was an appropriate placement for children leaving inpatient treatment. The contradicted hearsay father points to does not overcome the otherwise substantial evidence supporting the juvenile court's ruling.

14

"crucial" that Audrey resume therapy to avoid losing the progress she had made in the residential facility.

Father responds with two arguments.

First, he contends that Audrey's need for continued treatment was not sufficiently urgent to necessitate the drastic step of limiting his rights, thereby distinguishing this case from *R.W.*, *supra*, 172 Cal.App.4th 1268. The evidence belies this contention, as Audrey had gone nearly a month without receiving *any* therapeutic services since her discharge from the residential treatment program, and her care team recommended that she immediately be enrolled in an intensive PHP to avoid relapsing into her past anxiety.

Second, father distinguishes this case from *In re D.C.* (2015) 243 Cal.App.4th 41, by noting that he had not harassed anyone involved in the process of enrolling Audrey at Hillsides. While that may be true, *D.C.* does not purport to set the floor. Further, father was unresponsive and obstructive, and devoted most of his effort in the month after discharge to accusing the Department of conspiring against him rather than prioritizing Audrey's mental and emotional welfare—which was consistent with his history of aggressively inserting himself into Audrey's care, including suing her former therapist. That he stopped short of actual harassment does not negate the impediment he posed to Audrey's imminently necessary treatment.

## DISPOSITION

The juvenile court's jurisdiction finding as to father is reversed. Upon remand, the juvenile court is directed to modify its jurisdiction and disposition order by striking father from the sole jurisdiction allegation that was previously found true against him. As modified, the juvenile court's jurisdiction and disposition

15

orders are affirmed.  The orders limiting father's educational and developmental decision-making rights are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:



_____, J.
MOOR



_____, J.
KUMAR*

---

\*      Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.